STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES H. BOLITHO, PLAINTIFF IN ERROR.

Submitted January 29, 1926—Decided January 26, 1927.

1. The regularity of the procedure which invoked an investigation is not properly subject to a collateral attack, such as upon a trial of an indictment for malfeasance in office.

2. A challenge upon the ground that the trial judge was disqualified, in law, to hear and determine the issues involved under an indictment, cannot be sustained where it is quite obvious that the acts of the trial judge complained of fall far short of showing that he had any personal or private interest apart from a duty which he, as a judicial officer, owed to the general public, namely, to protect the people against corruption and misconduct of its public officers in the administration of the county's business; and in order to achieve the end in view, he ordered, under the statute, an investigation so that offenders betraying the public trust might be unveiled and brought to punishment.

3. The interest which every law-abiding citizen has in the suppression of crime cannot disqualify such citizen from sitting in judgment, as a judge or juror, impartially, between the state and the accused.

4. An application to a Supreme Court justice for a writ of *certiorari* to remove an indictment into the Supreme Court for the purpose of

moving before that tribunal to quash is addressed to the discretion of the justice. If he refuses to exercise his discretion to allow the writ, the application may be made to the Supreme Court, *en banc.* But the refusal of either furnishes no proper basis for an assignment of error, under proceedings by strict writ of error, nor for a specification of cause for reversal in proceedings under the one hundred and thirty-sixth section of the Criminal Procedure act.

5. The provisions of section 8 of the Jury act (*Rev.* 1877, *p.* 532; *Comp. Stat., p.* 2966), in so far as it authorized the appointment of elisors and confers the power upon them to select and summon grand and petit jurors is not inconsistent with the provisions of the Chancellor-Sheriff Jury act. *Pamph. L.* 1913, *p.* 833.

6. The power of the attorney-general to designate assistants to represent him, as declared by *Pamph. L.* 1922, *p.* 11, is not limited to a designation of those assistants who were, at the time of designation, clothed with the title of assistant attorney-general.

7. An indictment is not rendered void because of the presence, in the grand jury room, of an interpreter to interpret the testimony of witnesses who could not speak English.

8. There is no inhibition in the Jury act, making a person who is licensed to practice law ineligible to serve as an elisor.

9. The Court of Oyer and Terminer has power to order a special term and to impanel a grand jury.

10. An indictment based upon the accusation of official misconduct in office, may properly allege therein divers acts of official misconduct, even though such acts were committed on different days and differ in their nature and constitute distinct offenses against the law, so long as they are cognate to the charge of official misconduct.

---

On error to the Morris County Court of Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the plaintiff in error, *Richard J. O'Connor.*

For the state, *Wilfred H. Jayne, Jr.*

The opinion of the court was delivered by

KALISCH, J. The plaintiff in error was convicted in the Morris County Court of Oyer and Terminer on an indictment charging him with malfeasance in his office of prosecutor of the pleas for the county of Morris. The indictment contains

eleven counts. These counts differ from each other in the nature of the malfeasance alleged to have been committed by the accused, and in that they charge separate and distinct acts of malfeasance to have been committed by him on different days of the years 1923 and 1924. The jury found him guilty on the first, fifth, sixth, seventh and tenth counts, and not guilty on the eighth and eleventh counts. The second, third, fourth and ninth counts were eliminated by the court from consideration by the jury. On each of the counts under which the plaintiff in error was convicted, it was adjudged that he be confined in the state prison at hard labor for a maximum term of three years and a minimum term of two years, and that the sentences should run concurrently.

The case is brought here for review on a strict writ of error and bills of exceptions, and also by virtue of the one hundred and thirty-sixth section of the Criminal Procedure act. Under the former there are one hundred and eleven assignments of errors for a reversal of the judgment, and under the latter there are ninety-six specifications of causes for reversal set forth to the same end. Many of the specifications of causes are repetitions of the assignments of errors. The assignments and specifications have been grouped and argued together, in an elaborate brief of three hundred and thirty-one pages, submitted by counsel of plaintiff in error, and these will now be considered in the order in which they are presented.

The first point in the brief argued and relied on by counsel of plaintiff in error for a reversal of the judgment invokes consideration of assignments of errors, 1, 2, 12, 13, 14, 47, 48, 49 and 50, and specifications of causes, 1, 2, 63, 64, 65 and 66. These raise the question as to the legal propriety of the judicial action of the trial judge in denying a challenge on behalf of the plaintiff in error upon the ground that the court was disqualified, in law, to hear and determine the issues involved under the indictment.

The challenge is in writing. It states, in substance, that it is made because the interest of the presiding Justice Charles W. Parker, "as shown by the following enumerated acts, is

such as to indicate a state of mind and an opinion contrary to the impartial administration of justice towards this defendant, to wit:

"1. Without authority in law, he ordered an investigation upon a petition signed by a less number of taxpayers and freeholders of the county of Morris than required by law, said petition not setting up any facts constituting reason for such investigation, and containing merely a conclusion, namely, that there were 'deplorable conditions' in the county of Morris."

2. That Mr. Justice Parker, without authority in law, appointed Wilfred Jayne, Jr., to prosecute and conduct the investigation without authority in law, &c.

3. That notwithstanding the law of May 29th, 1913, known as the "Chancellor-Sheriff Jury act," Mr. Justice Parker ordered and directed that the sheriff of the county of Morris be removed and thereby William C. Sweeny, the other jury commissioner, was prevented from acting as such, and that the said justice appointed two elisors, namely, Victor A. Weiss and Joshua R. Salmon, to select and impanel an elisor grand jury, &c. That the said Salmon is licensed to practice law in the State of New Jersey, and that under the "Chancellor-Sheriff Jury act" of 1913 he was not eligible to be appointed a jury commissioner; that the said justice was interested in and took part in the selection of the elisor grand jury, in that he furnished to the Elisor Joshua R. Salmon three different lists of names of grand juries previously selected at previous times in the Court of Oyer and Terminer; that the list supplied to the elisor was not a list from which a grand jury could be legally drawn under the Chancellor-Sheriff Jury act; that the said elisors added twenty or more different persons to the list given to them by the justice, and chose from those added names in making up the grand jury; that Nathaniel C. Toms, clerk of the grand jury, and under civil service, at the request of Mr. Justice Parker, resigned, and one J. Donald Masterton, a non-resident of the county was appointed by the justice as temporary clerk, though he was not selected from the civil service list nor an employe of the office of the prosecutor of the pleas of Morris

county; that the said justice ordered and permitted the said Masterton to take the testimony of witnesses appearing before the elisor grand jury, &c.; that the said justice knew that there were only twenty-two persons sworn in as grand jurors, whereas the law requires that a grand jury shall consist of twenty-three jurors.

To this challenge there was a demurrer filed on behalf of the state, the legal effect of this pleading being an admission of such facts as are properly stated as a ground of challenge, but a denial of their sufficiency, in law, to disqualify the trial judge to hear and determine the issues involved in the case.

The avowed basis of the challenge, plainly stated therein, is that the interest of the trial judge, as shown by his acts enumerated in the challenge, is such as to indicate a state of mind and an opinion contrary to the impartial administration of justice towards the accused.

Proceeding upon the theory that the acts of the trial judge complained of in the challenge are accurately stated, it is quite obvious that they fall far short from showing that he had any personal or private interest apart from a duty, which he, as a judicial officer, owed to the general public, namely, to protect the people of Morris county against corruption and misconduct of its public officers in the administration of the county's business; and in order to achieve the end in view, he ordered, under the statute, an investigation, so that offenders betraying the public trust may be unveiled and brought to condign punishment.

The regularity of the procedure which invoked the investigation is not properly subject to a collateral attack, and, moreover, was, as aptly said by the trial judge, wholly irrelevant to the subject-matter of the challenge. The other matters spread out in the challenge do not indicate any such personal and private interest in the cause, as would legally disqualify the trial judge from hearing and deciding the issues involved under the indictment.

The proper function of a challenge to the competency of a judge to sit in a cause on the ground of interest and bias has been, apparently, misconceived by the challenger, for in considering the import of the other matters set forth in the

challenge, we find that they comprise a series of judicial acts of the trial judge, which acts, if unauthorized, may properly support a challenge to the array of grand jurors selected and summoned by elisors; or if an unauthorized person was permitted to be present in the grand jury room during the deliberation of the grand jury when the indictment against the accused was found, such a circumstance can be assigned as error; yet, in no proper sense does either of these acts furnish a valid basis to a challenge of a trial judge on the ground of interest and bias.

We may safely assume that every law-abiding citizen is naturally at war with violators of the law, and, hence, is more or less interested in the suppression of crime, which interest springs not only from a sense of self-protection, but also from a duty to protect the community, as well, against unlawful acts of its members, and, therefore, it is quite obvious that in order to entertain the notion stressed in the brief of counsel of plaintiff in error, we would be driven to the ludicrous declaration that such an interest, as above indicated, disqualifies a judge or juror from sitting in judgment, impartially, between the state and the accused. Such a course would deal a disastrous blow to our judicial system.

In *State* v. *Spencer,* 21 *N. J. L.* 196, Chief Justice Hornblower (at *p.* 198) stated a sound legal rule to be applied when he said: "A declaration of opinion to disqualify a juror, therefore, must be such an one as implies malice or ill-will against the prisoner, thereby showing that the person challenged does not stand indifferent between the state and him. This is the uniform language of the books and cases which are of authority under our constitution, as well as of the English courts up to the present time." This legal rule had become firmly imbedded in the law of this state. The salutariness of the rule is luminously dealt with by Chief Justice Green, in *State* v. *Fox,* 25 *Id.* 566 (commencing at *p.* 586). We cannot conjure up any good reason why the legal principle enunciated is not equally applicable to a challenge to a judge upon the ground of interest and bias. We think it is. The challenge was properly overruled.

Under point 2 of the brief, it is next urged that the trial judge erred in overruling defendant's challenge to the array of petit jurors. The challenge was as follows: "1. That the said jury was purported to be drawn by Charles E. Estler, sheriff of the county of Morris, who, heretofore, by the order of Mr. Justice Parker, was disqualified as jury commissioner for Morris county, and while so disqualified participated in the drawing of said petit jury, and because the said Charles E. Estler, sheriff as aforesaid, was interested in the outcome of several of the cases to be tried by said petit jury, including that of defendant above mentioned. 2. That the aforesaid petit jury, by reason of the wide publicity given to the criminal proceedings, which will be brought before it, is prejudiced and biased."

To this challenge the state filed a demurrer. It is to be observed that the challenge is radically defective, in that it fails to set out any facts disclosing the sheriff to have been improperly interested in the outcome of the trial of the case against the defendant. It will not be presumed that he was improperly interested. Whether or not he was improperly interested in the outcome of the trial of the defendant was a burden resting upon the defendant to establish by competent evidence. This he made no attempt to do. In the second reason set forth in the challenge there is a like absence of any facts in support of the assertion "that the aforesaid petit jury, by reason of the wide publicity given to the criminal proceedings which will be brought before it, is prejudiced and biased." The characterization of the jury as "prejudiced and biased" does not within its general sense embrace the controlling essential fact that it is prejudiced and biased against the defendant. Against which party such prejudice and bias is entertained, whether against the state or against the defendant, the challenge does not disclose.

The argument of counsel of plaintiff in error to the effect that because the panel of petit jurors was drawn by the jury commission, of whom the sheriff was one, and he, subsequently, being disqualified by the trial judge, because of his interest in the cause, thereby disabling the commission to further function, whereupon the trial judge appointed elisors

who selected and summoned the panel of grand jurors, therefore, the panel of petit jurors became disqualified, is not only illogical but transparently fragile. The panel of petit jurors was drawn according to law by the jury commissioners, and the fact that the sheriff was subsequently disqualified on the ground of such an interest in the cause as to disqualify him from participating in drawing a panel of grand jurors, standing alone, did not have the effect of invalidating the act of the jury commissioners or affect the lawful status of the petit jury.

Moreover, the challenge under consideration, like the challenge to the judge, has the same radical defect, in that it contains solely a statement of the reasons for making the challenge. This has been held to be insufficient in law. *Mann* v. *Glover,* 14 *N. J. L.* 195, 203; in *State* v. *Barker,* 68 *Id.* 19, 21, the Supreme Court held that "a demurrer only admits the facts set out in the pleading, and not then unless they are sufficiently pleaded." The challenge was properly overruled.

Under point 3 it is contended, on behalf of the plaintiff in error, that Mr. Justice Parker erred in refusing to allow a writ of *certiorari* to review the indictment. The state of the case shows that application was made to the justice for a writ of *certiorari* to review the form of the indictment. This application was properly denied. An application to a Supreme Court justice for a writ of *certiorari* to remove an indictment into the Supreme Court for the purpose of moving before that tribunal to quash is addressed to the discretion of the justice. If he refuses to exercise his discretion to allow the writ the application may be made to the Supreme Court *en banc.* But the refusal of either furnishes no proper basis for an assignment of error, under proceedings by strict writ of error nor for a specification of cause for reversal in proceedings under the one hundred and thirty-sixth section of the Criminal Procedure act. It will not be out of place to state here that for more than fifty years it was the fixed practice to disallow an application for a writ of *certiorari* to remove an indictment into the Supreme Court for the purpose of moving there to quash it, unless the prosecutor of the

pleas consented to its removal, or unless it appeared upon the face of the indictment that it was clearly defective in substance and a motion to quash had been made in the court of the first instance, which motion was denied.

It is evident that such a course avoids delay in the trial of criminal cases, without depriving a defendant of any legal right he may have to question the validity of the indictment against him, on the trial and upon appeal, of course, if he pursues the practice which obtains in that respect.

We now approach the consideration of the attack made upon the validity of the indictment by the plaintiff in error. The grounds of his attack are—(1) that the indictment was found by an elisor grand jury, there being no authority in law for the appointment of elisors and for the drawing of grand juries by elisors; (2) that Mr. Jayne was not a legally appointed judicial officer, and, therefore, his presence in the grand jury room and his participation in presenting testimony before the grand jury against the plaintiff in error invalidated the finding of the indictment; (3) that the appointment of the grand jury clerk by the trial judge was without authority in law, and that his presence in the grand jury room during the deliberation of the grand jury which resulted in a finding of the indictment against the plaintiff in error invalidated the indictment; (4) that the presence of an interpreter in the grand jury room, to interpret the testimony of witnesses who could not speak English, invalidated the indictment; (5) that the indictment is duplicitous in containing eleven counts, each count charging a different offense committed on a different day and naming different persons as third parties in each count; (6) that one of the elisors appointed by the court was Joshua R. Salmon, who was not qualified to be a jury commissioner by virtue of section 1 of the Chancellor-Sheriff Jury act; (7) that the grand jury consisted of only twenty-two members who were sworn in.

There was a motion at the close of the entire case to direct a verdict for the defendant for some of the reasons as stated in the motion to quash the indictment and some additional reasons based upon the ground of insufficiency of proof. There was also a motion in arrest of judgment which covered

some of the grounds argued on the motion to quash, and thus only the questions raised as to the validity of the particular counts of the indictment by objections and rulings thereon are properly here for decision. Before proceeding to discuss the various questions raised it is well to point out here that in the motion of arrest of judgment the claim made is that one Mr. Weiss, one of the elisors appointed by the court, was not a citizen. There was no proof offered to substantiate that assertion and the trial judge properly disregarded it.

Now, as to the authority of the trial judge to appoint elisors.

The contention on behalf of the plaintiff in error is, that by virtue of the Chancellor-Sheriff Jury act (*Pamph. L.* 1913, *p.* 833), the power formerly vested in the court to appoint elisors, as indicated in section 8 (*Rev.* 1877, *p.* 532; 3 *Comp. Stat.,* *p.* 2966, § 13a), was repealed. Of course, it could not be successfully argued that prior to the passage of the act of 1913, *supra,* such power did not exist, in view of the decisions of the Court of Errors and Appeals in *State* v. *Zellers,* 83 *N. J. L.* 666; *State* v. *Egan,* 84 *Id.* 701; *State* v. *Kuehnle,* 85 *Id.* 220, 222, to the effect that the power of the court to appoint elisors to select and summon grand and petit jurors is sanctioned by section 8, *supra,* and, therefore, was unassailable.

In support of the contention that section 8, *supra,* was repealed by the Chancellor-Sheriff Jury act, counsel of plaintiff in error argues that the history of events which led to its enactment and the tenor of its provisions established that it was the intention of the legislature to erect a complete structure for the selecting and drawing of grand and petit jurors, and that such intention is clearly evinced by the very first section of the statute which provides that the Chancellor of this state shall appoint in each county a citizen, resident therein, who shall not be a member of the same political party as the sheriff of such county, and who, together with the sheriff of such county, shall constitute and be designated as "commissioners of juries," followed by sections which provide how grand and petit jurors shall be selected and summoned, and relating to other matters connected therewith, and then points out that section 14 provides: "All acts and parts

of acts inconsistent with this act are hereby repealed and shall take effect immediately," and thereupon concludes that the legal effect of this legislation was to repeal section 8. Counsel of plaintiff in error seems to have overlooked section 13 of the statute in question, which section provides: "Nothing herein contained shall be held or construed in anywise to limit the power of the court or any justice or judge, as heretofore had or exercised in connection with the drawing or discharge of jurors or panels."

Now, it cannot be successfully gainsaid that the power of a court to appoint elisors, in a proper case, to select and summon grand and petit jurors, did not exist prior to the passage of the 1913 statute, for that was the precise judicial power which was exercised in the cases of *State* v. *Zellers, State* v. *Egan* and *State* v. *Kuehnle, supra,* the existence of such judicial power being recognized and sanctioned by these cases. It will be presumed that the legislature in enacting the statute of 1913 was aware of the provisions of section 8 of the Revision of 1877, and of the construction placed upon it by our highest tribunal, and, therefore, used the wise precaution to expressly declare that nothing contained in the statute of 1913 "should be held or construed in anywise to limit the powers of the court or any justice or judge as heretofore had or exercised in connection with the drawing or discharge of jurors or panels."

Moreover, we have not only been unable to detect anything in the provisions of the act of 1913 indicating that the legislative intent was to erect an independent and complete structure for the selecting and summoning of grand and petit jurors, solely, by virtue of the provisions of the supplement, as contended for by counsel of plaintiff in error, but find from a comprehension of the entire act an obvious intent of the legislature to add to the Jury act of the Revision of 1877, *supra,* some salutary features and to maintain undisturbed the provision of section 8, which manifestly seeks to prevent a halt in the operation of the judicial machinery, on both the criminal and civil sides of our courts, in the event that a statutory emergency arises for the appointment of elisors be-

cause of the disability of the jury commissioners to function, by reason of the disqualification of both or either of them.

It goes without saying that it would have served no good and efficient purpose for the legislative body to have conferred upon a court the power to appoint elisors, where an emergency had arisen requiring such appointment, unless there was legal machinery provided to go with the appointment which would enable the elisors to select and summon grand and petit jurors. This is accomplished by section 8 of the Jury act. *Rev.* 1877, *p.* 532; 3 *Comp. Stat., p.* 2966. We are therefore of the opinion that the provision of this section in so far as it authorized the appointment of elisors and confers the power upon them to select and summon grand and petit jurors is not inconsistent with the provisions of the Chancellor-Sheriff Jury act. In addition to what has been said in that regard the fact that the statute of 1913 is entitled "A supplement to an act entitled 'An act concerning juries' (Revision), approved March 27th, 1874," and makes no provision therein for the selection and drawing of grand and petit jurors in the event of the disqualification of both or either of the commissioners is of great significance and as indicating that the legislature was content and intended that upon the happening of the disability of the commissioners to function by reason of disqualification, the court should appoint elisors to select and summon grand and petit juries, as sanctioned by section 8 of the Jury act of 1874, to which the act of 1913 is a supplement.

Furtheremore, since this section of the Jury act is obviously intended to prevent grave interruption likely to occur in the orderly course of the administration of the law, especially in that part of it comprehending the selecting and drawing of grand and petit juries, and since a repeal of the section in question would tend to produce incalculable mischief to the maintenance and enforcement of law and order, and in the absence of any substituted legal machinery having been provided for in the supplement for that of section 8 of the Jury act, in the event the jury commission should become disabled from functioning, and in giving due weight to the

sections of the Jury act with which the challenged section is in *para materia,* and as implied repealers are not favored in the law, we are persuaded that all these considerations tend to confirm the conclusion reached that section 8 is in full force and effect and was so intended to be by the law-making power of the state.

As a further ground for quashing the indictment, it is urged that Mr. Jayne was improperly designated by the attorney-general to appear on behalf of the state to conduct the proceedings against the plaintiff in error, the said Jayne not being one of the assistants, or assistant of·the attorney-general. at the time of such designation, and, therefore, his presence in the grand jury room at the time evidence was presented upon which the indictment was predicated was unauthorized and illegal, and because the said Jayne at the time was the prosecutor of the pleas for Ocean county, and for that reason, also, his appointment as assistant attorney-general was not according to law.

There was no proof that Mr. Jayne was in the grand jury room at any time while testimony was being presented against the plaintiff in error, but even if this were a fact, in the view we take of the question raised, Mr. Jayne was properly there.

The contention of counsel of plaintiff in error, that the power of the attorney-general to designate such assistant or assistants to represent him "for prosecuting the criminal business of the state therein, including the investigation of alleged crimes and misdemeanors, the attendance before the criminal courts and grand juries of the county, the preparation of indictments and the trial of indictments for crimes and misdemeanors," as declared by chapter 1 (*Pamph. L.* 1922, *p.* 11), was limited to a designation of those assistants who were, at the time of designation, clothed with the title of assistant attorney-general, has not even the merit of being specious. The record of the case shows a full compliance with the statute. Moreover, the title of Mr. Jayne to function as assistant attorney-general is not subject to be collaterally questioned.

Next, it is argued that the appointment of the clerk of grand jury by the trial judge was without authority in law,

and, hence, his presence in the grand jury room during the taking of the testimony of the witnesses and the deliberation of that body, resulting in a finding by it of an indictment against the plaintiff in error rendered such indictment a nullity. The inanity of this argument lies in the circumstance that there is no fact disclosed in the record which supports the assertions made.

The fourth ground urged to support the motion to quash is that the indictment is rendered void because of the presence of an interpreter in the grand jury room to interpret the testimony of witnesses who could not speak English.

We do not perceive any error in this. If it becomes necessary to have an interpreter in order to elicit testimony from a witness who cannot speak English, there seems to be no good reason why a grand jury may not summon to its assistance some reputable person who understands the foreign language of the witness, and can speak English, to interpret what is said in the foreign tongue, even though he be not an interpreter appointed by the court. Unless this be so investigations of grand juries into matters affecting the peace, safety and welfare of a community might be seriously hampered and thus lead to injurious delay and obstruction of justice.

Another ground upon which the validity of the indictment is impugned is, that one of the elisors appointed by the trial judge was Joshua R. Salmon, a person licensed to practice law, whereas by section 1 of the "Chancellor-Sheriff Jury act," a person licensed to practice law is ineligible to be appointed as a jury commissioner. Manifestly, there is no merit in this contention, since Mr. Salmon was appointed an elisor and not a jury commissioner, and there is no such inhibition in the jury act in relation to the appointment of elisors. Although it was assigned as error that the indictment is invalid because only twenty-two persons were impaneled as grand jurors, whereas the law requires that a grand jury shall consist of twenty-three jurors, this objection appears to have been abandoned since it is not presented or argued in the brief of plaintiff in error.

Another ground of reversal urged is, that the grand jury of the January term, 1925, of the court, was undischarged at the time the *venire facias* for the elisor grand jury issued, and that such elisor grand jury was selected and impaneled before the regular grand jury was discharged. This assertion is not borne out by the facts stated in the record before us. The record discloses that the grand jury of the January term was discharged on February 18th, 1925, on which said date the order disqualifying the sheriff was filed. The elisor grand jury that found the indictment against the plaintiff in error was impaneled on the second Tuesday of March, 1925. But it is further urged that the court was without authority to order a special term, and, hence, the impaneling of the grand jury by the court was without authority and does not constitute due process of law. This argument is built on a fallacious theory. The Court of Oyer and Terminer has power to order a special term and to impanel a grand jury. *State v. McDevitt,* 84 *N. J. L.* 11; affirmed by the Court of Errors and Appeals, 85 *Id.* 731.

We now approach the consideration of the merits of the attack made upon the validity of the indictment, a motion having been made to quash it, before a jury was sworn, which motion was denied and an exception taken, and, subsequently, the same grounds as presented on the motion to quash were presented and urged in arrest of judgment, which motion was denied, and an exception having been taken, error is assigned thereon.

In making the motion to quash, Mr. Matthews, then counsel of plaintiff in error, said: "I would like to make the following motions to the face of the indictment 49 [the indictment on which the plaintiff in error was convicted], for the purpose of having it quashed, and I will deal with it by counts." The ground alleged as the basis of the motion to quash count one, the refusal of which motion is relied on as error requiring a reversal, is that the count is ambiguous, duplicitous and contradictory in terms.

An examination of the allegations of the count proves the criticism directed against it to be without merit. The count sets forth with clearness and certainty various cognate acts

of official misconduct.   This is no fault in an indictment of malfeasance in office.

There seems to be no good reason, where the indictment is based upon the accusation of official misconduct in office, why a careful pleader should not allege therein diver acts of official misconduct, even though such acts were committed on different days and differ in their nature and constitute distinct offenses against the law, so long as they are cognate to the charge of official misconduct.

Malfeasance in office, generally termed official misconduct, is a common law offense and possesses the same characteristics in pleading that obtain in indictments founded on common law offenses, arising out of or composed of the commission of a series of immoral or unlawful acts.   This is illustrated by the form of indictments for keeping or maintaining a disorderly house, and for other kinds of nuisances. It is true that the keeping of a disorderly house or creating and maintaining any other kind of a public nuisance is a continuous offense, but so also may be the offense of malfeasance in office, as was in this case, be made up of various acts of official misconduct, and, therefore, it seems to us there can be no legal obstacle to properly present by indictment the various acts of official misconduct in a single count even where such official misconduct has spread over a considerable period of time.

An examination in the procedure at common law discloses that prosecution for malfeasance was generally, but not invariably, had by criminal information filed by the attorney-general, because malfeasance in office on conviction involved forfeiture of office as well as punishment.   2 *Chit. Crim. L.* 117; 1 *Hawk. P. C., ch.* 27, § 1; 2 *Arch. Cr. Pr. & Pl. (Ed.* 1877), *pp.* 1364, 1365.

It is important to observe that the charge of duplicity is directed against each particular count of the indictment and not against the indictment as a whole.   The question, therefore, before us, is not whether the indictment is duplicitous, but whether each individual count is subject to the criticism made.

The proper function of added counts, at common law, was, and still is, unless changed by statute, to charge the alleged wrongful act set out in the indictment, to have been committed by various means or methods, so as to anticipate any fatal variance which might arise between the allegations in the indictment and the proof of the means by, and the manner in, which the wrongful act was committed if the charge of the indictment was confined to a single count. Thus, at common law, in an indictment for murder, the commission of the offense was charged in separate counts by various means, namely, stabbing, shooting, drowning, &c., and if the proof was that the deceased came to his death by any of the means alleged in the indictment, the prosecution would not fail. This nicety of pleading, at common law, has been changed in this state in homicide cases. A statute prescribes the form of an indictment for murder and manslaughter. 2 *Comp. Stat.*, p. 1832, § 36. A bill of particulars under the statutory form of indictment meets the common law requirements above referred to. See *State* v. *Mowser*, 92 *N. J. L.* 474 (at *pp.* 476, 477).

The only other departure from the common law which bears upon the legal propriety of charging in an indictment distinct offenses of the same character, committed on different days, is to be found in sections 47 and 48 of the Criminal Procedure act. 2 *Comp. Stat.*, p. 1835. Section 47 permits any number of distinct acts of embezzlement committed by the accused against his master or employer, within six months from the first to the last act to be joined in an indictment. Section 48 relates to where property is alleged to have been stolen at one time was taken at different times, the prosecutor shall not be required to elect upon which taking he will proceed (except in cases in which the court shall so order) unless it shall appear that there were more than three takings, or that there were more than the space of six months elapsed between the first and last of such takings.

These statutory changes are signally illustrative of the common law rule on the subject discussed. The indictment *sub judice* proceeds wholly upon the theory of a single crime, namely, malfeasance in office. The various acts of misconduct

of the accused set forth in the indictment are more in the nature of a bill of particulars of the various acts of official misconduct of the commission of which the plaintiff in error was accused, and surely he is not in a position to complain that he was harmed because the state apprised him in the most ample manner of the deeds of official misconduct of which he was accused. It may be the indictment was not the product of scientific pleading and according to strict legal rules. But we are not concerned with the form of the indictment but only with its substance.

While we give full recognition and force to the well-settled legal rule that a count in an indictment cannot be utilized for the purpose of joining separate and distinct offenses even though of a like nature, no such objection seems to have been made on the motion to quash the indictment, followed by a motion to direct a verdict for the defendant or in arrest of judgment, and, hence, there is nothing before us to require a judicial pronouncement.

Another ground for reversal urged on behalf of the plaintiff in error is, that the trial judge erred in permitting an amendment of the eighth count of the indictment relative to a matter of substance.

Since the jury acquitted the plaintiff in error on this count he suffered no harm.

The next point made is that the trial judge erred in refusing to direct a verdict of not guilty. The motion to direct a verdict for defendant was palpably frivolous. There was plenary evidence of facts and circumstances from which the jury could properly find that the accused was guilty of official misconduct.

Next, it is contended that the court erred in the admission and rejection of evidence to the prejudice of defendant. Assignments of error numbers 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 54, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 70, 71, 72, 74, 75, 80, 83, and specifications of causes for reversal numbers 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 25, 26, 27, 28, 29, 30, 31, 32, 33, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 60 and 61, are stated in the

brief on behalf of the plaintiff in error as relating to "the admission of evidence brought out on examination of the witnesses by the prosecutor which are assigned as errors and as causes for reversal of the conviction of the plaintiff in error." The counsel for plaintiff in error contents himself by saying "that the examination of the evidence in question was for the purpose, namely, of creating prejudice in the minds of the jurors against the plaintiff in error, and such prejudice was created thereby; that this evidence for the most part was immaterial and did not relate in any manner to the allegations contained in the counts of the indictment.

It is apparent that this attempt to argue in a wholesale manner, so to speak, the various assignments of errors and causes for reversal without pointing out specifically the testimony erroneously admitted or rejected, is in clear violation of the legal rule relating to the subject-matter. *State* v. *Donelly,* 26 *N. J. L.* 463 (at *p.* 512); *Kargman* v. *Carlo,* 85 *Id.* 632 (at *p.* 636); *Miller* v. *Delaware River Transportation Co.,* 85 *Id.* 700. Moreover, counsel of plaintiff in error fails to quote in his brief the testimony erroneously admitted or rejected and to point out in what respect any of the rulings of the court on the evidence was erroneous. The general characterization that the judicial action was prejudicial is of no force.

It is further contended on behalf of the plaintiff in error that the assignments of errors numbers 33, 34, 35, 53, 55, 56, 59, 73, 76, 77, 78, 79 and 84, and specifications of causes for reversal, and numbers 22, 23, 24, 35, 37, 38, 51, 55, 58, 59 and 70, relating to the refusal of the court to admit evidence on the part of the plaintiff in error present further grounds on which reversal of judgment is sought. But nowhere is it pointed out in what respect the rulings of the trial judge were erroneous, except by a general declaration of counsel that the plaintiff was prejudiced in properly presenting his case in that he was restricted in his right of cross-examining the witnesses and deprived of material evidence to which he was entitled. No testimony is quoted which would enable the court to determine whether the rulings of the court were lawfully warranted or not. Of course, the

opinion of counsel, that the accused was deprived of his right of cross-examining a witness, unsupported by the testimony raising the question, and the ruling of the court thereon is of no weight and will be disregarded.

It is further urged for a reversal that the trial judge, in the course of the trial and in his charge, made comments unfavorable and prejudicial to the plaintiff in error. We do not find this assertion supported by the record.

It is further urged, on behalf of the plaintiff in error, that under assignments of errors numbers 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102 and 103, and specifications of causes for reversal numbers 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88 and 89, the judgment should be reversed, because of errors committed in the charge of the court. The specific error or errors in the court's charge are not set out. Copious extracts of the judge's charge are to be found in the assignments of errors and specifications of causes for reversal, but nowhere is the specific error alleged to have been made by the court pointed out. The manner in which the assignments of errors and the specifications of causes for reversal, attacking the legal soundness of the judge's instruction to the jury, is presented for review is wholly in disregard of the legal rule already adverted to and laid down in *State* v. *Donelly, Kargman* v. *Carlo* and *Miller* v. *Delaware River Transportation Co., supra.*

Lastly, it is urged, on behalf of the plaintiff in error, that the verdict is against the weight of the evidence. We have read the evidence with great care and we have reached the conclusion that the jury could not properly have arrived at any other verdict than it did. It appears on the record that though the plaintiff in error was sentenced on each count of the indictment, nevertheless, the judge, manifestly, considered all of the counts as constituting a single indictment for the offense of malfeasance in office, and, hence, ordered that the sentences pronounced on each should run concurrently.

For the reasons given judgment is affirmed.