THE STATE OF NEW JERSEY, RESPONDENT, v. LEWIS R. HOGAN, DEFENDANT-APPELLANT.

Submitted January 20, 1948—Decided August 21, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the respondent, *Joseph B. Perskie,* Special Deputy Attorney-General.

For the defendant-appellant, *Harry Green* and *Philip L. Lipman.*

The opinion of the court was delivered by

BURLING, J.   Lewis R. Hogan was convicted of malfeasance under an indictment consisting of seven counts and sentenced to imprisonment at hard labor in the State Prison for a minimum term of one year and a maximum term of two years, and to pay a fine of $1,000.   Each count consisted of three paragraphs, the first paragraph setting forth that the defendant was a duly elected commissioner of the City of Millville, a city governed by the Walsh Act (*R. S.* 40:71–1, *et seq.*); the second paragraph specifying that certain individuals (which individuals were different in each count) violated the gambling laws of the State of New Jersey in certain ways set forth in such paragraph; and the third paragraph specifying that the defendant, well knowing the premises and not regarding the duties of his office, but perverting the trust imposed in him and intending to obstruct the enforcement of law and justice, to enable the named individuals habitually to violate the gambling laws, did take, accept and receive bribes and pecuniary rewards from them and did grant them venal police protection and immunity from arrest.   Notwithstanding the number of individuals concerned and the length of the indictment, at the close of the state's case, the Special Deputy Attorney-General took the position that each count was in the nature of a bill of particulars and that the state proceeded

wholly upon the theory of a single crime, namely, malfeasance in office. *State* v. *Bolitho* (*Supreme Court,* 1926), 103 *N. J. L.* 246; *affirmed* (*Court of Errors and Appeals,* 1927), 104 *Id.* 446. This theory was accepted by the defendant.

This appeal has been brought pursuant to *R. S.* 2:195A–1, *et seq.* (*Pamph. L.* 1946, *ch.* 187, effective February 1st, 1947, as amended) and in accordance with Supreme Court Rule 147½. The entire record of the proceedings had on the trial has been certified and transmitted to this court.

At the trial testimony was adduced from which the following facts could be found: The City Commission of Millville was elected in May of 1945 at which time defendant became the Director of Public Safety. Thereafter gambling in many forms was conducted. This state of events culminated in the holdup of a dice game on March 15th, 1947, which holdup received extensive publicity in the local and nearby metropolitan press. As the result of this publicity and of activity on the part of local citizens, the City Commission passed a resolution calling on defendant to investigate and report upon the situation. On March 28th, 1947, defendant made a written report to the Commission, which report stated that the alleged conditions of gambling and robbing were "rumors and gossip."

Defendant was then given a leave of absence of three months and an investigation was commenced by a member of the Bar, who was engaged by the city as special counsel. Shortly thereafter, as a result of this investigation, slot machines were discovered and impounded and a Special Deputy Attorney-General was appointed to take charge of the case. As a result of the complete investigation, indictments were returned by the grand jury, among these being the one under which defendant was tried. Of the persons indicted, all pleaded guilty or *non-vult*, with the exception of defendant and two others who pleaded not guilty and were acquitted.

It developed at the trial that the individual who collected the bribes was one George Hinson, who had been a patrolman in the Millville police force and who had resigned during the course of the above investigation. The bribes were paid by the operators and varied from $10 to $275 per week. Hinson, who was likewise indicted and later pleaded *non-vult*, testi-

fied that he contacted various operators, arranged for the payment of the venal money and thereafter collected it from a certain towel rack in a local garage at specified times and thereafter delivered the money to defendant, who was his superior. Thereafter, defendant would tally the totals giving Hinson a percentage thereof.

The state produced expert testimony to the effect that certain typewritten slips of paper, which purported to show the accounts between Hinson and defendant, were typed upon a machine which was located in a private office in the Millville city hall used extensively by the defendant. The state likewise called many of the gambling operators who testified in corroboration of Hinson that they had paid "protection money". to Hinson. Although the only direct implication of defendant was the testimony of Hinson, it is significant that the defendant does not argue the question of the court's refusal to dismiss the indictment or direct a verdict nor does he argue that the verdict is against the weight of the evidence, and the grounds relating thereto are deemed to be abandoned.

Appellant has filed ninety-four grounds of appeal, of which fifty-one were not argued and are deemed to be abandoned. Twenty-two of those argued encompass the rulings involving the neutralization of witnesses' testimony and are argued collectively in appellant's brief. They involve the trial court's ruling in permitting the state to cross-examine several of the witnesses called by the state under plea of surprise and refusing the defendant's requests to immediately instruct the jury each time as to the effect of such cross-examination and that under the guise of such cross-examination the state introduced testimony of a prejudicial and damaging character against the defendant. It appeared that numerous of the state's witnesses, who had hitherto made statements during the course of the investigation, altered their testimony on the witness stand and the court after plea of surprise permitted cross-examination of these witnesses and it permitted the state to introduce evidence to the effect that the statements made by some of these witnesses were, contrary to their testimony on the witness stand, not made under duress or pressure. We perceive no error in the court's rulings.

It has long been the rule in this state that a party may cross-examine his own witness when the witness testifies in a different manner than that expected by counsel. *State v. D'Adame (Court of Errors and Appeals,* 1912), 84 *N. J. L.* 386; *State v. Kysilka (Court of Errors and Appeals,* 1913), 85 *Id.* 712; *State v. Guida (Supreme Court,* 1937), 118 *Id.* 289; *affirmed (Court of Errors and Appeals,* 1937), 119 *Id.* 464. This cross-examination is permitted for the sole purpose of neutralizing or of wiping the slate clean of the unexpected adverse testimony of the witness and is to be clearly distinguished from impeachment. *State v. Villiano (Supreme Court,* 1948), 137 *Id.* 176. The control of this examination is within the discretion of the trial court. Grounds of appeal are argued in the instant case that as to the first four witnesses it appeared that when initially requested by defendant to instruct the jury immediately as to the effect of this testimony the court declined as to them, stating that he would do so in the charge. Later, however, when the same situation re-occurred, the court changed its position and at that time and each time thereafter that surprise was pleaded, instructed the jury that this testimony was for the purpose of neutralizing inconsistent prior statements and no error is assigned as to them. Moreover the court did charge upon this subject and the charge was complete and ample. We are of the opinion that the trial court acted within the scope of its discretion. *State v. D'Adame, supra* (at *p.* 396); *State v. Newman (Supreme Court,* 1942), 128 *Id.* 82 (at *p.* 86).

The appellant further contends that before the state should be permitted to cross-examine its own witnesses for the purpose of neutralizing their testimony by confronting them with a prior inconsistent statement in writing, a foundation must be laid by questioning them with reference to such statement. The application of this rule rests in the discretion of the trial judge and such preliminary foundation is not mandatory in this state. *State v. D'Adame, supra* (at *p.* 398).

Appellant further argues that the court erred in permitting the state to amplify its neutralization attempts by the testimony of other witnesses, including Nathaniel Rogovoy, an

attorney who was an assistant to the Special Deputy Attorney-General in order to show factual background of the previous statement. Again this was a matter within the discretion of the trial court which may permit not only cross-examination of the witnesses but the production of other witnesses. *State v. D'Adame, supra* (at *p.* 395.). The scope of the examination of these witnesses was under the discretion of the court and such discretion was not abused.

Appellant argues that the trial court erred in refusing to charge, as requested by appellant, the definition of non-feasance and misfeasance, and also erred in the supplemental charge in instructing the jury that they could bring in a verdict of guilty based upon any part of any count. We perceive no merit in this contention. It is sufficient to say that defendant was not charged with non-feasance or misfeasance but with malfeasance based upon bribery and both the state and the defense concurred in the statement that the trial was proceeding on the theory of a single crime, namely, malfeasance, which was clearly defined to the jury.

We have examined the remaining grounds of appeal which were argued and relied upon. They require no specific discussion and we find no reversible error contained therein. From the entire record of the proceedings, it does not appear that the appellant suffered manifest wrong or injury. The judgment of the Cumberland County Quarter Sessions is affirmed.