## STATE OF MISSOURI, Respondent, v. BENTON WHITE, Appellant.

### Kansas City Court of Appeals, February 3, 1913.

1. **CRIMES AND PUNISHMENTS: Justices of Peace: Intoxication.** The defendant, a justice of peace, was tried and convicted under Sec. 10203, R. S. 1909, which provides a punishment for a public officer, who becomes so intoxicated that he is incapacitated to perform any official act at the time and in the manner required of him in the discharge of the duties of his office. It is *held* the evidence shows beyond question that the defendant was not so disabled at the time charged and the trial judge erred in not peremptorily instructing the jury to return a verdict for the defendant.

2. ———: ———: ———: ———. It is not a crime for an officer to use intoxicating liquors, but it is a crime for him to be intoxicated, while in the performance of any official duty, or to be incapacitated by intoxication for the discharge of any official duty at a time, and in a manner, required of him by law.

3. ———: ———: ———: **Incapacitated.** The term "incapacitated," as used in the statute, means the inability on account of intoxication, properly, to perform an official act when it should be performed.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris*, Judge.

REVERSED.

*Gillespie & Conley* and *J. L. Stephens* for appellant.

*E. C. Anderson* and *W. H. Sapp* for respondent.

JOHNSON, J.—On information of the prosecuting attorney, defendant, a justice of the peace in Boone county, was tried and convicted of a violation of section 10203, Revised Statutes 1909, which provides: "If any public officer . . . shall be intoxicated while in the performance of any official act or duty, or shall become so intoxicated as to be incapacitated to perform any official act or duty at the time and in the manner required of him in the discharge of the duties of his office, he shall be deemed guilty of a misdemeanor in office and punished by imprisonment in the county jail not exceeding six months, or by a fine of not less than fifty dollars, or by both such fine and imprisonment, and if there be no provision made by law for the removal from office of such officer by impeachment, the court shall adjudge the defendant to have forfeited his office," etc.

It will be observed there are two clauses in this section. Under the first it is made an offense for an officer to be intoxicated while in the performance of any official duty, while under the second the offense lies in the officer being so intoxicated as to be incapacitated to perform any official act or duty when properly called upon to do so. [State v. Taylor, 93 Mo. App. 327.] The offense charged in the information is under the second clause and, consequently, the burden is on the State to prove beyond a reasonable doubt that defendant not only was intoxicated at the time he

was required by the duties of his office to perform an official act, but was so intoxicated that he was incapacitated to perform such act properly. The learned trial judge thought the evidence adduced by the State sufficient to carry the case to the jury and a verdict of guilty was returned in which the punishment was assessed at a fine of fifty dollars. In the judgment rendered on this verdict defendant was sentenced to pay the fine and was removed from office

The facts of the case are as follows: Defendant, who is over seventy years old, has been a justice of the peace in Rocheport, Boone county, many years and has been a good officer. Many of the leading members of the Boone county bar appeared as witnesses and all unite in saying he is a good man and has faithfully and efficiently discharged the duties of his office. He is too fond of ''John Barleycorn'' and has been known to be drunk but he always made it a point to be sober when holding court or performing other official duties. One evening a negro, without permission, rode away on a horse belonging to a liveryman in Rocheport and that night was arrested by the marshal at the instance of the liveryman and was lodged in the town calaboose. About seven o'clock the next morning which was October 14, 1911, the liveryman went to defendant's home to procure a warrant for the arrest of the negro. The liveryman testified in part:

''Q. Did you ask for a warrant for his arrest? A. I told him I wanted to get out the papers to arrest the negro. . . .

''Q. Where was the defendant when you saw him? A. He was at the house in bed.

''Q. What clothing, if any, did he have on? A. He had his pants on—I don't know whether he had his coat on or not.

''Q. Did he have on his shoes? A. I don't know

whether he did or not—I would not say. I know he had his pants on.

"Q. Did you or not get a warrant? A. No, sir.

"Q. Why not? A. It looked like I was not able to get one. He told me 'I will hunt up my papers and come down town after awhile,' and I come on out.

"Q. What was his condition—drunk or sober? A. I thought he was drunk. He had the trembles—and I made the remark that he could not navigate."

Later in the morning defendant did go "down town" to attend to the business but in the meantime the liveryman changed his mind, decided not to prosecute the negro and sent an oral mesage to that effect to defendant.

The prosecuting witness, a merchant of Rocheport, apparently on unfriendly terms with defendant, testified that he saw defendant twice that morning, first, when he passed defendant's house while the liveryman was there, and later when defendant passed in front of his store. He saw defendant the first time through the door which was open and his "impression is that he was drunk."

On the other hand defendant testified he had not drunk any intoxicants that morning, was not under the influence of intoxicants in any degree and that he was not in bed when the liveryman called. He states his wife was ill; that he had lost sleep in taking care of her and that he was in a nervous condition when he arose that morning. He was engaged in the preparation of breakfast and on learning the object of the liveryman's visit, stated he would go "down town" as soon as his duties at home would permit and would then attend to the business. An hour later he left home for that purpose and was informed on the street that the liveryman had decided not to prosecute the negro.

There are other facts in the record but those stated control the disposition of the case.

As is said in the case of State v. Taylor, supra, an officer may get drunk and not violate the statute. The purpose of the law is the maintenance of the public service on a plane of decency and efficiency by placing a ban on a practice that would be detrimental to the interests of good government. But there is no thought expressed in the statute of a legislative purpose to interfere with the private lives of public officers. It is not a crime for an officer to use intoxicating liquors but it is a crime for him to be intoxicated while in the performance of official duty or to be incapaciated by intoxication for the discharge of any official duty at a time and in a manner required of him by law.

Though the liveryman called on defendant at a time outside of usual business hours, the duties of defendant's office included that of issuing warrants for the arrest of lawbreakers at all hours of legal days and we are willing to concede it was the duty of defendant to be in condition to attend to the request of the liveryman at the time it was made. But the weakness of the case made out by the State lies in the complete failure of the evidence to show that defendant was incapacitated by intoxication at that time. The charge is that he was so incapacitated and the State must prove that charge. The evidence tending to show he was under the influence of intoxicants is weak and unsatisfactory, but conceding for argument, that it possesses enough probative weight to raise an issue of fact, it tends to show not that defendant was not in condition to prepare and issue the necessary papers but that he was in full possession of his faculties and could and would properly perform the act at a convenient and proper time. There was no occasion for extreme haste. The negro was in durance and an hour's delay in issuing the papers would have been immaterial. Defendant talked and acted in a reasonable and rational manner and proceeded with

reasonable expedition to discharge his duties towards the case. By the term "incapacitated" as used in the statute is meant the inability on account of intoxication properly to perform an official act when it should be performed. The evidence shows beyond question that defendant was not so disabled at the time the warrant should have been issued and the learned trial judge erred in not peremptorily instructing the jury to return a verdict for defendant.

The judgment is reversed. All concur.