JOSEPH S. MARTIN, PROSECUTOR, v. THEODORE H. SMITH ET AL., CIVIL SERVICE COMMISSIONERS, RESPONDENTS.

Argued March 28, 1924—Decided June 23, 1924.

1. The uttering of a willful misstatement of the truth by a police officer to his superior is sufficient reason for finding him guilty of conduct unbecoming an officer, as the same rules of conduct of a servant in public life apply as in ordinary business affairs.

2. On the review of the conviction of a police officer of conduct unbecoming an officer, this court will not weigh the testimony for the purpose of forming an independent judgment of his guilt or innocence, nor reverse the judgment if there be evidence to support it.

On writ of *certiorari* reviewing judgment of civil service commissioners.

Before Mr. Justice MINTURN, by consent.

For the prosecutor, *Walter L. McDermott.*

For the respondents, *Thomas J. Brogan.*

The opinion of the court was delivered by

MINTURN, J.    The prosecutor, while desk sargeant in the seventh precinct police station in Jersey City, was tried upon charges before the city commissioners, and again, upon appeal, before the civil service commissioners, and upon both trials was convicted of stating an untruth, concerning the theft of an envelope and its contents consisting of $100 in twenty-dollar bills, from one True, then in the custody of the police. The envelope had been handed to the prosecutor by a patrolman in the police station, but the prosecutor denied having received it. Subsequently, after some publicity of the occurrence, the money was returned to True, in the mail by one who signed himself "Conscience Stricken." The sender proved to be one Cornelius Noonan, a former member of the police depart-

ment, who thereafter made affidavit, and stated to others, that he had found the envelope with the money. Upon the strength of this disclosure application was made to reopen the case, which was granted by the commissioner of Jersey City in charge of the police department, who heard the case *de novo,* including this newly-discovered testimony, as well as the testimony of the son and daughter of Noonan in contradiction thereof. The city commissioner again found against the prosecutor, from which finding an appeal was again taken to the civil service commission, who, having head all the testimony, again affirmed the finding of the police commissioner. This writ of *certiorari* removes to this court the judgment of the commission.

The testimony taken before the commission is quite voluminous, no less than twenty witnesses having been produced and examined upon the hearing. The case, it must be conceded, is quite unique in its details, and furnishes a conception of public life seldom found except in the realms of romance, or the histrionic tradition of Damon and Pythias. Mr. Noonan, so far as the public were concerned, went to his final resting place without divulging the story as his son and daughter related it upon the witness-stand. To others he had stated, even in the hospital, that he had found the fatal envelope, and that his conscience troubled him to see in the public prints that an innocent man, this prosecutor, was charged with taking it. The son and daughter testified that the father, from sheer sympathy for the prosecutor, agreed with him to bear the burden of finding the money and restoring it. The son, ensconced in a nearby room, heard the *modus operandi* outlined by the prosecutor with Noonan in the latter's home. The daughter, upon her visits to the hospital where her father was being treated in his last illness, heard the confession from his lips, almost in *articulo mortis,* of his unselfish effort to save the prosecutor from the penalty of his own wrong-doing. At least four witnesses saw the envelope in the possession of the prosecutor upon the day of the arrest of True, and some of them testified that they saw the prosecutor tear it open. The prosecutor's testimony

upon the subject is uncertain in character, and leaves one in doubt as to whether he possessed it at the time.

If the court were not circumscribed and limited in its duty in this instance by the well-settled rule of law applicable to cases of this character, it might properly be urged to weigh the testimony, and, if possible, reach a conclusion different from that which has been reached by the trial tribunals. But the settled rule of law is that if there be evidence upon which the trial tribunal may reasonably found its conclusion of guilt or innocence, this court will not reverse the judgment by weighing the testimony for the purpose of forming an independent judgment. If the judgment of the trial court can be fairly supported by the record, the duty of this court is at an end so far as further investigation is concerned. *Reilly* v. *Jersey City,* 64 *N. J. L.* 508; *Crane* v. *Jersey City,* 90 *Id.* 109.

It is urged that the charge of lying or misstating important and essential facts to a superior officer presents no reasonable basis for dismissal. The prosecutor was charged with uttering a willful misstatement of truth to his superior, and in that respect violated rule 32, section 1 of the rules of the department relating to conduct unbecoming an officer. In ordinary business affairs such conduct, to say the least, would lose the party the confidence of his employer, and render his efforts practically useless in the further prosecution of his employment. Why it should operate otherwise in a public employment is not at all clear, except upon the theory that the rules of morality applicable have no bearing upon the conduct of a servant in public life. The police department of our cities, however, is built upon a plane of public efficiency, which has ordinary truth and morality as its base, and when these essential elements of public probity be lost, the department shall have lost, not only the confidence of the community, but the fundamental mainstay and support which is necessary to its effective and satisfactory operation.

For these reasons the judgment removed by this writ will be affirmed.