PUBLIC WELFARE COMMISSION OF DETROIT *v.* CIVIL
SERVICE COMMISSION OF DETROIT.

1. COURTS—DECISIONS—WRITTEN OPINIONS.
    In the absence of some positive requirement to that effect, it is
    not necessary that a court rendering a decision should in all
    cases give a written opinion (Const. 1908, art. 7, § 7; 3 Comp.
    Laws 1929, § 13556).

2. MUNICIPAL CORPORATIONS—CHARTERS—DISCHARGE OF EMPLOYEES
    —CIVIL SERVICE COMMISSION—WRITTEN OPINIONS.
    Under city charter requiring that an appointing officer furnish
    a discharged employee with a copy of the order of removal and
    reasons therefor but making no like requirement of civil service
    commission, a *quasi* judicial body also established by the
    charter, the commission was not required to give written
    reasons in support of its finding that the discharge of the
    general superintendent of the city's public welfare depart-
    ment was not made for political reasons but was made for
    reasons other than the good of the service (Detroit City
    Charter, title 4, chap. 2, § 18).

3. CERTIORARI—SCOPE OF REVIEW OF EVIDENCE BY SUPREME COURT.
    On appeal in nature of certiorari to review determination of city
    civil service commission that discharge of general superin-
    tendent of the public welfare department was made for reasons
    other than the good of the service and not sustaining such
    discharge, Supreme Court will ascertain if the judgment of the
    commission can be fairly supported by the record but will not
    weigh the evidence for the purpose of forming an independent
    judgment.

4. SAME—QUESTIONS REVIEWABLE—EVIDENCE.
    On certiorari, Supreme Court may not review questions of fact,
    may not determine disputed facts, nor weigh the evidence
    except to determine whether it will justify the finding made
    as a legitimate inference from the facts proved, it being an
    appropriate remedy to avoid a judgment which there is no
    evidence to sustain.

5. COURTS—REVIEW OF ORDERS BY CITY CIVIL SERVICE COMMISSION—
CERTIORARI.
   Courts are limited in the review of findings of city civil service
   commission to the narrow confines of the office of the writ of
   certiorari (Detroit City Charter, title 4, chap. 2, § 18).

6. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION—GENERAL
SUPERINTENDENT PUBLIC WELFARE DEPARTMENT — DISCHARGE —
CERTIORARI.
   On certiorari from order of city civil service commission failing
   to sustain discharge of general superintendent of city public
   welfare department because it was made for reasons other than
   for the good of the service, record *held*, to support commis-
   sion's finding (Detroit City Charter, title 4, chap. 2, § 18).

7. COSTS—TWO DEPARTMENTS OF CITY GOVERNMENT AS LITIGANTS.
   In litigation between two departments of a city government no
   costs are allowed one against the other.

Appeal from Civil Service Commission, City of
Detroit. Submitted April 19, 1939. (Docket No. 114,
Calendar No. 40,495.) Decided June 5, 1939.

G. R. Harris was discharged by the Public Wel-
fare Commission of the City of Detroit from his
position as General Superintendent of the Public
Welfare Department. Upon hearing before Detroit
Civil Service Commission, G. R. Harris was rein-
stated. Public Welfare Commission petitions for
review of order of reinstatement by appeal in na-
ture of certiorari. Affirmed.

*Raymond J. Kelly,* Corporation Counsel, and
*Clarence E. Page* and *Walter E. Vashak,* Assistants
Corporation Counsel, for plaintiffs.

*John C. Bills,* for defendant Civil Service Com-
mission of the City of Detroit.

*George A. Kelly* and *Walter E. Kelly,* for de-
fendant Harris.

BUSHNELL, J. On March 10th last, upon application of the public welfare commission of the city of Detroit, plaintiffs and appellants herein, we granted leave to appeal from an order of the civil service commission of the city of Detroit in the matter of defendant G. R. Harris, who had been discharged from his position as general superintendent of the public welfare department and whose discharge was not sustained by the civil service commission. This appeal is in the nature of certiorari.

On December 13, 1938, Harris was informed in writing that he had been discharged, effective as of that date, and the department listed in detail the reasons for his discharge, which may be summarized as insubordination, ordering the reduction in rentals to be paid to landlords of welfare tenants without the knowledge or approval of the commission, submission of a proposed budget to the State welfare commission without consulting plaintiffs, an antagonistic attitude toward the commission, and with maintaining an attitude of insolence, arrogance and insubordination which seriously impaired the efficiency of the department. The department also furnished Harris with a bill of particulars in support of the insubordination charge. Harris, under the provisions of the hereinafter-quoted section of the city charter, requested and obtained an investigation of the charges by the civil service commission. The testimony taken and material exhibits produced at the investigation are set up in a printed record of over 500 pages. The civil service commission, with one member dissenting, found, "after thorough investigation, that the discharge of Guernsey R. Harris was not made for political reasons, but was made for reasons other than the good of the service and therefore the discharge is not sustained."

Appellants argue that the finding of the civil service commission should be set aside because no written reasons were given in support of the finding, that it is arbitrary and illegal and that the evidence submitted to the civil service commission does not justify a finding that the public welfare commission acted in bad faith in entering its order discharging Harris. The civil service commission argues that the only question involved is whether there is substantial evidence in the record to sustain its finding. Appellee Harris says the order of reinstatement was legal and is supported by the evidence.

The civil service commission of the city of Detroit exists by virtue of the provisions of chapter 2, title 4, charter of the city of Detroit. Section 18 of this chapter provides that:

"No person shall, for political or religious reasons, be discharged from the classified service, or reduced in pay or position, or suspended by the departmental head appointing him. In every case of reduction or suspension for more than thirty days and in all cases of discharge, the appointing officer shall furnish the subordinate reduced, suspended or discharged, also the civil service commission, with a copy of the order of removal and his reasons therefor. The commission may, and upon the written request of the subordinate made within ten days, shall investigate. If it shall find as the result of such investigation that the discharge, reduction or suspension was made for political or for reasons other than the good of the service, it shall so report to the departmental head, and the person so discharged, reduced or suspended shall thereupon be entitled to resume his position and to receive compensation for the time lost."

Appellants cite *Dullam* v. *Willson*, 53 Mich. 392 (51 Am. Rep. 128), and other authorities in support

of their argument that the civil service commission must set up the factual basis upon which it reached its finding. In the *Dullam Case* the governor acted *ex parte* under the constitutional power to remove a State officer, a wholly different situation from that presented in this matter. The court held that the governor's power of removal could only be exercised in the manner provided in the Constitution. This included a report of "the causes of such removal to the legislature at its next session." See Constitution of 1850, art. 12, § 8.

The general rule is that in the absence of some positive requirement to that effect it is not necessary that a court rendering a decision should in all cases give a written opinion. See 15 C. J. p. 967, and Constitution of 1908, art. 7, § 7, 3 Comp. Laws 1929, § 13556 (Stat. Ann. § 27.50). All parties agree that the Detroit civil service commission is a *quasi* judicial body. In the absence of a charter or statutory requirement, we see no reason why it should be held to a stricter rule than courts.

While the charter requires the appointing officer to furnish the discharged employee with a copy of the order of removal and the *reasons* therefor, the civil service commission is not required to do other than investigate and report its findings to the departmental head. Nothing is said in the charter to indicate that the civil service commission is required to give any reason for its finding.

The finding that the discharge was not made for political reasons is not challenged, but it is claimed that the finding that the discharge was for reasons other than for the good of the service is not justified by the evidence. *Delaney* v. *Detroit Board of Fire Commissioners,* 244 Mich. 64, is cited in support of this argument. Delaney had had a trial before the board of fire commissioners and he was discharged

for "intoxication and for the good of the service." The civil service commission, on review, determined that Delaney was not intoxicated as charged and ordered his reinstatement. Defendants refused to comply with this order and Delaney secured a writ of mandamus from the circuit court. In setting aside the writ we held the authority of the civil service commission under the charter was to inquire into the motives or reasons for the discharge and not into the sufficiency of the evidence upon which the trial board acted. The authority of the *Delaney Case* must be confined to review by a civil service commission of the finding of a trial board.

The law applicable to the case at bar is stated in *Carroll* v. *City Commission of City of Grand Rapids,* 265 Mich. 51, where the court said:

" 'But the settled rule of law is that if there be evidence upon which the trial tribunal may reasonably found its conclusion of guilt or innocence, this court will not reverse the judgment by weighing the testimony for the purpose of forming an independent judgment. If the judgment of the trial court can be fairly supported by the record, the duty of this court is at an end so far as further investigation is concerned.' *Martin* v. *Smith,* 100 N. J. Law, 50 (125 Atl. 142)."

In a subsequent contempt action the court said in *Carroll* v. *City Commission of City of Grand Rapids,* 266 Mich. 123:

"On certiorari this court may not review questions of fact. *Brown* v. *Blanchard,* 39 Mich. 790. It is not at liberty to determine disputed facts (*Hyde* v. *Nelson,* 11 Mich. 353), nor to review the weight of the evidence. *Linn* v. *Roberts,* 15 Mich. 443; *Lynch* v. *People,* 16 Mich. 472. Certiorari is an appropriate remedy to get rid of a void judgment, one

which there is no evidence to sustain. *Lake Shore & Michigan Southern Ry. Co.* v. *Hunt,* 39 Mich. 469.

" 'The office of a certiorari is not however to review questions of fact, but questions of law. And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal.' *Jackson* v. *People,* 9 Mich. 111 (77 Am. Dec. 491).' "

If the civil service system as set up by the people of Detroit is to be effective, there should be finality to the findings made by the commission and review by courts should be limited to the narrow confines of the office of the writ of certiorari.

We are not unmindful of the price that must be paid by the public for the preservation of a civil service system and that it is not conducive to the best administration of public affairs to require a department to be operated with commissioners and their superintendent at swords' points.

The situation presented by this appeal is not that of an ordinary city employee working under the immediate direction of the head of a department but one involving the superintendent of welfare relief for the city of Detroit, engaged in supervising the aid of thousands of unemployed and their dependents under most unusual conditions, for which he was paid about $10,000 a year. The department of which he was the head was handling large sums of money, including rental at the rate of $3,000,000 a year for about 5,000 families. It is to be assumed that, under such circumstances, he would have more freedom of action than one performing services involving less responsibility.

We are only concerned, however, with the determination of whether or not there was substantial evidence to support the finding of the commission. The record sustains the finding that the discharge of Harris was for reasons other than for the good of the service. That finding is affirmed. Costs should not be allowed one department of the city against another but will be granted to respondent Harris.

Wiest, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred. Butzel, C. J., did not sit.