56 N.J. Super. 509 (1959)
153 A.2d 688
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HAROLD COHEN, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER MONTANO, DEFENDANT, AND HAROLD COHEN, DEFENDANT-APPELLANT. [Re: Indictment Nos. 62-58, 64-58].
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1959.
Decided July 10, 1959.
*511 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Benjamin Edelstein argued the cause for defendant-appellant (Messrs. Edelstein and Edelstein, attorneys).
Mr. Vincent P. Keuper, Monmouth County Prosecutor, argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
Defendant is a policeman of the City of Asbury Park. He was heretofore granted leave by this court to appeal from an order of the Monmouth County Court denying motions to quash two indictments found against him for misconduct in office. In indictment No. 62-58 he is charged alone; in indictment No. 64-58, with another police officer, Peter Montano.
Indictment No. 62-58 is in five counts. In each of them it is stated that defendant was a police officer of the City of Asbury Park and that the acts charged were in violation of his duty as such officer. The acts alleged may be summarized in their essentials as follows, omitting considerable evidential detail improperly included therein: (1) he confessed *512 to another named police officer the facts that he had bought a boat with $500 stolen by him from parking meters of the city and that he had accumulated $30,000 in moneys stolen from such parking meters; (2) he attempted to obtain possession of a set of keys for the parking meters from the office of the city manager of the city at 10:50 o'clock at night on a date specified; that when discovered there by another named police officer he told him that if he could get the keys he "would be in," assertedly meaning he would be able to steal money from the meters; (3) he solicited a named meter collector of the city to steal money from the parking meters and to turn it over to defendant; (4) he solicited a named special officer and meter collector for the city to steal cans of money from the parking meters and to dump them in automobiles of certain police officers, promising to arrange that the said collector would not be followed on his rounds by the police; and he solicited the said collector to "make money with" the defendant by misappropriation of parking meter moneys; (5) he solicited a named parking meter repairman of the city to tamper with the meter boxes so that the latter might steal money therefrom, offered to show the repairman how to tamper for that purpose, and informed him that he would arrange to have the change taken by the repairman converted into bills of currency.
Defendant's basic attack upon this indictment is that it does not specify the prescribed duties of his office alleged to have been violated and that the acts specified do not relate to any official duty resting upon him and therefore amount to no more than private misconduct, if anything, not official misconduct indictable as such.
The indictments before us concededly intend to charge the common-law crime of misconduct in office, constituted a misdemeanor under the general provisions of N.J.S. 2A:85-1, which is the statute asserted in the indictments to have been violated. The Supreme Court has approved the definition of the crime found in 1 Burdick, Law of *513 Crime (1946), § 272, p. 387 (State v. Weleck, 10 N.J. 355, 365 (1952)), as follows:
"`By "misconduct in office," or "official misconduct," is not meant misconduct, criminal or otherwise, which is committed by a person who happens to be a public officer, but which is not connected with his official duties. Such conduct is sometimes called private misconduct to distinguish it from official misconduct. * * *
"Misconduct in office," or "official misconduct," means, therefore, any unlawful behavior in relation to official duties by an officer intrusted in any way with the administration of law and justice, or, as otherwise defined, any act or omission in breach of a duty of public concern, by one who has accepted public office.'"
The court went on to say (10 N.J., at p. 366):
"It is essential, therefore, that an indictment for misconduct in office allege both a prescribed duty of the office and facts constituting a breach thereof."
We give consideration first to the question whether the patent failure of this indictment to allege the prescribed duties of defendant's office allegedly violated warrants its being quashed. The language from Weleck, supra, which describes such an allegation as "essential" to a valid indictment, would seem peremptorily to require such a result. The State's brief argues in this regard that "there is no statute in New Jersey nor an ordinance of the City of Asbury Park which sets forth the duties of a police officer, therefore the State cannot allege a prescribed duty and a violation of that duty." This does not at all follow. There are duties which are inherent in the office of a policeman. Some of the most fundamental of these are set forth in State v. Donovan, 132 N.J.L. 319, 321 (Sup. Ct. 1945), quoted with approval in State v. McFeeley, 136 N.J.L. 102, 107, 108 (Sup. Ct. 1947) (diligence in detection of law-breakers and arrest and commencement of prosecution thereof). The fact that the duties assertedly violated so as to constitute misconduct in office are not found expressed in a statute or ordinance does not absolve *514 the State from seeing to it that the indictment apprises the defendant specifically as to what it is claimed they consist of.
The State may not take refuge in the rule that the source of the duties need not be set forth in the indictment where they are imposed by a general statute or arise out of the very nature of the office, State v. Weleck, supra (10 N.J., at p. 366). Defendant is not complaining about the absence of a statement of a source, but, rather, the absence of a recital of the duties themselves.
The State's brief contains the following interesting observation:
"A police officer occupies a unique position in the community in which he serves and in order for a police officer to render effective service to his community, his conduct must be above suspicion and beyond reproach, and if it is not, then his position is weakened, compromised, if not totally destroyed."
There can hardly be any quarrel with that proposition. But if the State's position is that the defendant was under an official duty to refrain from conduct not conforming with that standard that duty should have been stated in the indictment. There is case law in this state to the effect that conduct by a police officer, even when off duty, and not in the course of the performance of his assigned responsibilities, which tends to reflect upon the morale and discipline of the police force and department, may be aptly denominated misconduct in office, at least for purposes of a proceeding for removal or discipline of the officer for such misconduct. Herbert v. Atlantic City, 87 N.J.L. 98, 101 (Sup. Ct. 1915), quoted with approval in Ward v. Keenan, 3 N.J. 298, 311 (1949); and see Martin v. Smith, 100 N.J.L. 50, 52 (Sup. Ct. 1924). It has, moreover, been suggested that an officer's misconduct in his private affairs which interferes with the administration of his public duties would come within the scope of the crime of misconduct *515 in office. 3 Wharton, Criminal Laws and Procedure (1957), § 1404, p. 803; State ex rel. Kirby v. Henderson, 145 Iowa 657, 124 N.W. 767, 769 (Sup. Ct. 1910); State v. White, 168 Mo. App. 249, 153 S.W. 523 (Ct. App. 1913).
We do not, however, know of any case in which a police officer has been held criminally accountable for the common-law crime of misconduct in office on the basis of misbehavior off duty, or for conduct subversive of good discipline and morale in the police department but not involving the performance by the officer of his assigned duties. While we do not suggest that there therefore is no such criminal liability in theory, we are of the view that a defendant sought to be held on an indictment conceived in that theory, is, as a matter of reasonable opportunity to defend, entitled to be apprised thereof in the indictment through a recital therein of the specific duty attendant upon his office which he is charged to have breached. Compare State v. Williamson, 54 N.J. Super. 170, 185, 186 (App. Div. 1959). As noted, the general rule requires the duty violated to be set forth in the indictment even where it is easily inferable from the facts stated and of common application; a fortiori where the supposed application is novel.
There is ample time for the return of a new and properly drawn indictment in this matter, as against the running of the statute of limitations, should the law enforcement authorities be so advised. N.J.S.A. 2A:159-2 (L. 1953, c. 204). Indictment No. 62-58 is ordered quashed as defective.
Indictment No. 64-58, epitomized, charges, in its first count, that the defendant and a co-indictee, Peter Montano, were police officers of the City of Asbury Park, and, in violation of their duties as such, along with a third person, on a certain specified day went from parking meter to parking meter on Ocean Avenue in that city and draped the meters from public view with a coat, neither of said officers being then assigned to collect moneys from the *516 meters and neither being in uniform. The second count is directed only against Peter Montano. This indictment also purports to be for misconduct in office.
Aside from the failure of the first count of this indictment to allege any duty appertaining to the defendant's office alleged to have been violated, we fail to discern any facts therein amounting to anything more than suspicious behavior. No facts which of themselves could be reasonably argued to constitute misconduct in office are set forth. As this indictment does not state facts constituting the commission of a crime by defendant, it is ordered quashed, insofar as the defendant Harold Cohen is concerned.
Reversed.