## THE STATE v. WILLIAM LAMB.

Argued February 24, 1911—Decided June 6, 1911.

1. Section 197 of the act to regulate elections (*Pamph. L.* 1898, *p.* 237) does not apply to officers charged with the conduct of a party primary.

2. Section 190 of the act to regulate elections (*Pamph. L.* 1898, *p.* 237) does not apply to party primaries.

3. An indictment charged that the defendant who was a judge at a primary election willfully violated his duty and neglected and willfully omitted to perform the same in such a way as to hinder the object of the statute in that he knowingly, willfully and corruptly failed, neglected and refused to deposit in the box more than fifty ballots handed him by legally qualified voters, and knowingly, willfully and corruptly mutilated and destroyed upwards of fifty ballots cast in the box. *Held,* that the indictment charges two offences against section 217 of the act to regulate elections. *Pamph. L.* 1898, *p.* 237.

4. A defect either of form or substance that is apparent on the face of the indictment, may be cured by amendment under section 44 of the Criminal Procedure act, provided the amendment is not of such a character as to make the indictment charge a crime when, as presented by the grand jury, it fails so to do, or to charge a crime not presented by the grand jury.

5. An indictment charging in the same count two distinct offences of which the mode of trial is the same, and the punishment is the same in character even though it be different in degree, where the same defences are open to the accused, is not necessarily bad for duplicity; and upon a motion to quash, the state may be permitted to strike out one of the charges, if what is left suffices to charge a crime.

On motion to quash indictment.

Before Justices SWAYZE, BERGEN and MINTURN.

For the motion, *George A. Bourgeois.*

For the state, *Clarence L. Goldenberg.*

The opinion of the court was delivered by

SWAYZE, J.  The defendant has attempted to remove into this court by a writ of *certiorari* directed to and returned by the Atlantic Quarter Sessions an indictment which is shown by the caption to have been found in the Atlantic Oyer and Terminer.  An effort was made to cure this error by requiring the clerk to certify an order made by the Atlantic Oyer and Terminer referring the case to the Atlantic Sessions. The return shows that no such order was made, for the reason, apparently, that the indictment was in fact returned in the Sessions, pursuant to section 6 of the Criminal Procedure act.  It is obvious, however, that the recitals of the caption of the indictment cannot be thus contradicted, and we have therefore the case of an indictment found in the Oyer and Terminer which is not properly before us, since our writ was directed to the Sessions.  This cause would be sufficient to justify a denial of the motion.  We have, however, examined the points made by the defendant, and as our views may assist the court below, we venture to express them.

The indictment avers that the defendant was a member of a board of registry and election and was acting as judge of a primary election, that it was his duty to receive from voters the ballots and deposit the same in the ballot box, and at the close of the election to take the ballots from the box and publicly and audibly read the same; it then charges that the defendant in disobedience to the statute, "did willfully and negligently violate his duty and neglect and willfully omit to perform the same in such a way as to hinder the object of the statutes in this, that he did knowingly and willfully and corruptly fail, neglect and refuse to deposit in the Republican

primary box, or any other box, more than fifty ballots, handed him by legally qualified voters, Republican tickets intended to be cast" for a candidate on that ticket; and "did likewise knowingly, willfully and corruptly mutilate and destroy upwards of fifty ballots cast in said Republican primary box, the same being Republican primary tickets." The indictment seems to have undertaken to charge a willful and negligent violation of duty, and to specify as instances of such violation the refusal to deposit ballots and the mutilation and destruction of ballots. We do not stop to consider whether a violation of duty of this kind can properly be called negligent. The objection made is that the indictment fails to set forth the crime with sufficient certainty particularly because it charges three distinct crimes for which the statute provides distinct and different punishments. The indictment seems, however, to have been drawn under the first section of the supplement of 1905. *Pamph. L., p.* 224. It cannot be sustained under that section, which punishes only those offences for which no other penalty is specifically imposed, and a penalty for the acts specified in the indictment is imposed under the statute as originally enacted in 1898. The sections to be considered are sections 190, 197 and 217 of the Election act of 1898. *Pamph. L., p.* 237. Of these, section 197 is not applicable. The first clause of that section applies only to public officers; a clear distinction is made in the act of 1905 between public officers and election officers, a distinction which appears in other portions of the act. The second clause of section 197 applies to any person charged with the care of official ballots or envelopes. This might be construed broadly enough to include an election officer since he is entrusted with the care of the ballot by the voter for the purpose of depositing it in the box, and is thereafter charged with its care for the purpose of counting and making return of the result of the election; but the better construction in view of the other language of the section is that this clause applies only to those having the care of the ballots up to the time that the voter attempts to cast his ballot. Unless we adopt this construction we are confronted with the difficulty that section 197

imposes in its first clause a punishment of imprisonment for not more than three years, or a fine of not more than $3,000, or both, and by its second clause, imprisonment for not more than five years; while section 190 prescribes as a punishment for any person who shall alter or destroy any ballot or envelope or any paper contained in the ballot box, a punishment by fine not exceeding $500 or imprisonment not exceeding two years, or both. It cannot be that the legislature intended to impose inconsistent penalties for the same act, since in that event it could not be definitely known what the penalty was. To avoid this difficulty, we must adopt the narrower construction of section 197.

The charge that the defendant willfully and corruptly mutilated and destroyed ballots would charge an offence under section 190 of the Election law, which makes it a crime for any person to alter or destroy any ballot contained in the ballot box if that section applied to primaries. It does not, however, apply by its express terms, and the same offence of destroying or defacing ballots at a primary is provided for in section 217 of the original statute of 1898. At the time of the passage of that statute, section 190 evidently related only to the regular election, and section 217 only to the primary election. If both had related to the same election, there would have been an inconsistency in the statute, since the penalty under section 190 is a fine of $500 and imprisonment for not exceeding two years, or both, and the penalty under section 217 is a fine of $500 and imprisonment not exceeding one year, or both. Moreover, section 190 was expressly made applicable to primaries by section 33 of the act of 1903, a pretty plain declaration by the legislature that theretofore it had not applied. It is clear, therefore, that originally sections 190 and 217 did not overlap or conflict with each other. The act of 1903 does not produce any overlapping or inconsistency, for in extending section 190 to primaries the act expressly says that it shall apply as far as may be. We find no intent in that language to substitute section 190 with its severer penalty for section 217. As far as concerns the specification

that the defendant mutilated and destroyed ballots, we find therefore no such doubt or inconsistency as to the degree of punishment as will render either the statute or the indictment uncertain.

The other specification in the indictment that the defendant failed, neglected and refused to deposit in the Republican primary box more than fifty ballots, is ambiguous. It may. mean that he deposited fifty ballots, and no more, and if that is its meaning it fails to charge any offence since the indictment does not aver that more than fifty ballots were offered. It was probably, however, the intent of the pleader to charge that fifty ballots were handed to the defendant by legally qualified voters and that he refused to deposit them in the box. If this be the proper construction, it charges a violation of section 217 of the act, which makes it a crime for any judge of a primary election to knowingly reject the vote of any person entitled to vote. The result is that we find that the two acts set forth in the indictment as specifications of the defendant's violation of duty are both covered by the same section of the Election law, the penalty is the same, and as both relate to and are but instances of a violation of duty, the fact that both are averred would not make the count bad for duplicity if they are indeed but specifications of a distinct charge. They are set forth as such specifications, and the pleader has left it somewhat in doubt whether he intended that they should be specifications of a charge under section 197, or of a charge under section 1, of the act of 1905. The difficulty is, as we have already said, that neither section 197 nor the act of 1905 are applicable to the present case. It would, moreover, be quite impossible to hold that an offence against section 217, for which the penalty does not exceed one year imprisonment and $500 fine, could be treated as a specification under a charge for which the penalty might be as much as three years imprisonment and $3,000 fine, or five years imprisonment under the first and second clauses of section 197, or three years imprisonment under the act of 1905. The difference in the penalty makes it necessary to hold that the crimes defined in

these different sections are distinct crimes. The vice of duplicity cannot be avoided by treating the acts as specifications of a single charge.

This result does not, however, lead us to think that the indictment should be quashed. Section 44 of the Criminal Procedure act authorizes the court, where the defect in the indictment either of form or substance is apparent on its face, to cause the indictment to be forthwith amended. Such amendment, of course, must not be of such character as to make the indictment charge a crime, when, as presented by the grand jury, it fails so to do. *State v. Twining,* 42 *Vroom* 388. Where the difficulty in the indictment is that it charges too much an amendment has been permitted. *State v. Clement,* 51 *Id.* 669. The charge of a violation of duty may be wholly omitted and the indictment will still aver a refusal to deposit ballots in the box and the mutilation and destruction of ballots. This, it is argued, still leaves the indictment exposed to the objection of duplicity. Both offences are violations of the same section, but even if they are distinct offences, the count is not necessarily bad. It has, indeed, been held in New York that duplicity is fatal to an indictment. *People v. Wright,* 9 *Wend.* 193. The authority of this case, however, is very much shaken by the decision of the Court of Appeals of New York in *Polinsky v. People,* 73 *N. Y.* 65. The court said, referring to People *v.* Wright: "The general current of authority and the expressions of text-writers are the other way. *Commonwealth v. Tuck,* 20 *Pick.* 356; *Whart. Cr. L.,* § 390, and cases cited. *Bish. Cr. Pro.,* § 443." In a more recent case, the Supreme Court of Massachusetts limits the validity of an objection for duplicity to a case where one count in an indictment charges two offences distinct in kind and requiring distinct punishment. *Commonwealth v. Holmes,* 119 *Mass.* 195. Other cases, in other jurisdictions, are collected in 22 *Cyc.* 404, *note* 8. We have no decision in New Jersey precisely in point, but in *Stone v. State, Spenc.* 404, it was held that counts for different offences were proper, provided the judgments to be given for the offences are not necessarily different in char-

acter, even though the punishment for one offence was positive and for the other discretionary. The reasoning applies where there is but one count. It savors of technicality to hold an indictment bad merely because through defective pleading too much has been charged against the defendant. The mode of trial for the offences is the same, and the punishment, while different in degree, is the same in character. Every defence that is open under one charge is equally open under the other; no harm can be done the defendant by permitting the state to strike one of the charges from the indictment. This course secures to the defendant his constitutional right to an indictment by a grand jury and prevents a possible miscarriage of justice through defective pleading. We have held in this state, on an indictment for murder, that the name of the person killed might be changed from John Sonta to Joseph Sonta. *State* v. *Tolla,* 43 *Vroom* 515. If such a change is permissible under the constitution, surely an amendment, which merely strikes out charges of an indictment, is proper. It will be for the state to elect on which charge the defendant shall be tried.

The motion to quash is denied.