THE STATE, RESPONDENT, v. JAMES J. DONOVAN ET AL., PROSECUTORS-DEFENDANTS.

Argued January 31, 1944—Decided January 4, 1945.

Before Justices PARKER and PERSKIE.

For the prosecutors, *John Warren* and *Maurice A. Cohen.*

For the state, *Daniel T. O'Regan,* Prosecutor of the Pleas, and *William George* and *Frank G. Schlosser,* Assistant Attorneys-General.

The opinion of the court was delivered by

PARKER, J. The prosecutors in this cause, who were the mayor and certain other public officials of the City of Bayonne, were indicted by the Hudson County grand jury in June, 1942, for misconduct in office for failing and refusing to take suitable steps for the prosecution of allegedly flagrant criminal offenses on a large scale in that city. Application was made to a justice of this court for *certiorari* of the indictment as a basis for a motion to quash and, after argument, a writ was allowed. *In re Donovan,* 129 *N. J. L.* 25.

Trial of the indictment was naturally postponed pending decision in the present *certiorari* case, and the questions arising during the taking of the proofs in this cause have been before this court more than once; *State* v. *Donovan,* 129 *N. J. L.* 478; *S. C.,* 130 *Id.* 42. Final argument was had in this court at the January term, 1944, but at the request of counsel for the prosecutors, decision was deferred in order to enable him to submit certain answering briefs. These, after some delay, were submitted and have been duly considered.

The first ground on which it is argued that the indictment should be set aside relates to matters of form. As to this, it is sufficient to say that our examination of the indictment fails to indicate any irregularity in that regard. It charges in plain terms that the defendant officials were public officers of the City of Bayonne whose duty it was to see that the law was not broken in that city, and that they willfully, with knowledge, or because of culpable negligence, failed to take suitable steps to remedy criminal conditions of which they were fully aware and which were of public notoriety. It is

argued, as a branch of this point, that the duties of the defendants as public officers are confined to those specified in ordinances and resolutions of the board of commissioners and what is called "a written specification of the duties of the deputy director of public safety," and that the indictment fails to allege any breach of such duties. But this seems to us to fly in the face of ordinary common sense. One of the fundamental duties of a police department, from chief of police to patrolman, is to be on the lookout for infractions of the law and to use due diligence in discovering and reporting them, and in a proper case arresting the perpetrator and lodging and prosecuting a proper complaint. Detective bureaus are a common institution in cities; disorderly houses are all too common, and keeping a disorderly house is one of the commonest of crimes. Part of the duty of a city commission is to take suitable steps by way of prevention and prosecution of disorderly houses, and for a willful (and perhaps for an unduly negligent) breach of that duty, the officers responsible for its performance are liable.

The second ground of attack on the indictment is, in substance. that it was obtained by political influence for political purposes: and with regard to this there was an extended argument, particularly in the brief for the prosecutors. The claim, in substance, is that the grand jury and the state officials were influenced by politicians and by political motives to find an indictment that would not have been found without such influence, whatever the facts may have been. We fail to see any substance in this argument. The case of *State* v. *Elliott,* decided by this court in October, 1942 (129 *N. J. L.* 169), and affirmed in 130 *Id.* 174, is only one of a number of such cases, about fourteen in all, set out in the brief for the state, in which there were eight or more verdicts of guilty, half a dozen pleas of guilty, and two or three pleas of *non vult contendere.* In the face of this array of convictions, it is argued that the present indictment was a political move, and should be set aside because due in part to political influences, even though justified and indeed required in the public interest. We are unable to take this view of the matter. It is conceivable, of course, that political opponents may, for politi-

cal purposes, be on the lookout for criminal practices encouraged or countenanced by political adversaries: but where those criminal practices exist, where the proper authorities must be aware of them and fail or refuse to act, those authorities are liable to indictment, and may properly be indicted: and the fact that an indictment was prompted, or even procured by political adversaries, is, taken by itself, no ground for quashing. We think that a fair analogy is the common law action of malicious prosecution, to support which, two elements must be present: malice: and want of probable cause. And even where both elements are present, the action of malicious prosecution does not lie until a termination of such prosecution in favor of the party prosecuted. In the present case it may be that trial under the indictments before us will result in an acquittal: and then, and not until then would an action of malicious prosecution lie in favor of the defendants in the indictments against those that procured them. All this is hornbook law. But what we are asked to decide is, in substance, either that the prosecutors in *certiorari* should in effect be declared, without a trial, innocent of the charges against them, by a quashing of the indictment, or that assuming their guilt, nevertheless the indictment should be halted and expunged from the record because the grand jury was induced to find it by personal influences without which, whatever the facts before it, an indictment would not have been found.

It cannot reasonably be denied, we think, that considerable pressure, and some pressure of an illegal character, was exerted upon patrons and frequenters of disorderly houses, for the purpose of obtaining their testimony before the grand jury: but we are also clearly of opinion that it was for the grand jury to appraise the evidence before it, which of course is not before us, and that this court, as a tribunal that did not hear that evidence, should not undertake to interfere with a trial of the indictment on its merits. See *Proctor* v. *State*, 55 *N. J. L.* 472.

The writ of *certiorari* will accordingly be dismissed, with costs.