THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT A. O'BRIEN, WILLIAM P. BLACK AND M. JAMES McLAUGHLIN, DEFENDANTS-PROSECUTORS.

Submitted May 6, 1947—Decided September 16, 1947.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the State of New Jersey, *Horace K. Roberson*, Prosecutor of the Pleas in and for the County of Hudson, and *William P. Gannon*, Assistant Prosecutor.

For the defendants-prosecutors, *Frank G. Schlosser*.

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The motion is to quash three indictments returned by a Hudson County grand jury, one of them against Robert A. O'Brien and William P. Black for conspiracy, another against those two and M. James McLaughlin for conspiracy, and the third against Robert A. O'Brien, alone, for misconduct in office. A separate writ of *certiorari* issued as to each indictment. The writs were consolidated, after return, to be prosecuted as a single case, and this motion ensues.

First as to the conspiracy indictments: Robert A. O'Brien was a public official. He was clerk and executive assistant to the Board of Tax Commissioners in the Department of Revenue and Finance of the City of Jersey City. William P. Black also was a public official. He was the deputy collector of taxes in and for the City of Jersey City. Those two holders of public office in the laying and collecting of Jersey City taxes, so indictment No. 318 charges, wickedly devising and intending unlawfully and fraudulently to enrich themselves and to defraud the city, bound themselves together to obtain sums of money unlawfully and by cheating the city, whose officials they were, of tax moneys by causing taxes levied on real property to be unlawfully reduced. There were other words charging intent, corruption and conspiracy, but such is the purport of the conspiracy charge.

The indictment enumerates thirty-three specified instances —overt acts—wherein that conspiracy was given effect and was manifested. One of those detailed instances is that O'Brien, without the concurrence of the Board of Tax Commissioners, whose clerk and executive assistant he was, or of the city assessor, on January 7th, 1941, in furtherance of the conspiracy and to effect the object thereof, caused to be executed and filed a stipulation with the New Jersey State Board of Tax Appeals agreeing to a reduction in the amount of $400 in the 1939 assessment of a property assessed against the Hudson City Savings Bank and that the State Board render judgment accordingly. Another was a like incident on January 7th, 1941, with respect to the 1940 assessment on the same properety with the same owner, the reduction being $1,500. Another was for a like incident on the same day as to another lot but with the same owner whereon the reduction was $200. Thus, incident by incident, fully detailed, the indictment sets up thirty-three instances in which O'Brien in the years 1941 and 1942, in furtherance of the conspiracy and without the concurrence or authority of the city assessor or of the Board of Tax Commissioners, filed consents with the State Board of Tax Appeals agreeing that that body should enter judgments reducing assessments levied against the Hudson City Savings Bank. The indictment proceeds to enumerate three further overt acts alleged to have been in furtherance of the conspiracy, namely, that the said William P. Black did receive and take from Hudson City Savings Bank, on July 15th, 1940, $500 for his services rendered in securing the said tax reductions; so, $500 on July 14th, 1941, as like compensation; and, so, $500 on July 14th, 1942, as like compensation.

Indictment No. 70 is directed against the same two public officials and also M. James McLaughlin, a sub-assessor for the Board of Tax Commissioners in the Department of Revenue and Finance of Jersey City, and with similar words of illegality, intent, fraud and corruption the charge is that the three conspired to cheat and defraud the City of Jersey City of its moneys derived from taxation. The indictment sets up four overt acts. First, that McLaughlin, on Decem-

ber 1st, 1943, in furtherance of the conspiracy and to effect the object thereof, caused to be issued and recommended an authorization to revise the 1944 assessed valuation of certain specified real property owned by the said Black in the sum of: Land $6,400, improvement $4,000, a total of $10,400; said revised assessment being a reduction from the 1944 assessment which had been recommended by the Board of Tax Commissioners in the sum of: Land $6,400, improvement $8,200, a total of $14,600. Second, that O'Brien, on December 9th, 1943, in furtherance of the conspiracy and to effect the object thereof, approved, in writing, the said authorization. Third, that O'Brien, on December 9th, 1943, in furtherance of the conspiracy and to effect the object thereof, willfully, unlawfully and corruptly failed, neglected and refused to notify and call the attention of the Jersey City Board of Taxation, at its regular meeting held on that day, to the said authorization and O'Brien's approval of the same. Fourth, on January 8th, 1944, O'Brien, Black and McLaughlin, likewise in furtherance of the conspiracy and to effect the object thereof, caused to be modified, erased and changed the official figures of the said assessment, namely, land $6,400, improvement $8,200, as approved, advised and recommended by the Board of Tax Commissioners of Jersey City and appearing as such in the official tax lists for the year 1944 to read and appear to be assessed with the approval, advice and recommendation of the said board as land $6,400, improvement $4,000; all contrary to the form of the statute in such case made and provided and against the peace of this state, the government and dignity of the same.

The objections raised by defendants' brief to the conspiracy indictments are that neither indictment charges the statutory crime of conspiracy under *R. S.* 2:119–1; that to be sustained at all the indictments would need to be rested on the common law, a course which, they say, is barred by the decision in *State* v. *Borg,* 9 *N. J. Mis. R.* 59; that there is no charge that the money paid Black by the bank was unlawfully paid or unlawfully accepted; that O'Brien is not charged with having received any of the money; that there is no charge that the owners were not entitled to the reduc-

tions or that the properties were undervalued; that Black's employment by the city did not disentitle him to a reduction; that if there was a cheat it was against the taxpayers and not against the city; that the bank has no stockholders and no motive for wrongdoing; that the bank and its president were not indicted; that Black had nothing to do with assessment and that the indictment does not charge him with wrongdoing in any of the overt acts; that in not making a specification of illegality, such as larceny or embezzlement, the indictments are lacking in reasonable certainty; that the indictments are "vaguely couched;" that the defendants are not informed of the "nature and cause of the accusation;" and that the indictments do not conform to the rule of criminal pleading that they should contain a reasonably certain statement of the offense in order (1) to identify the accusation, lest the jury find a bill for one offense and the defendant be tried on another, (2) to inform the defendant of what crime he is called upon to answer, (3) to warrant the trial jury in acquitting or convicting the accused of the offense charged, (4) to permit the court to perceive and sentence for a definite offense upon the record, (5) to protect from double jeopardy. By express statement, the defendants do not make a point of the failure to allege and define the duties imposed by law upon them.

We accept as a basis of argument, without conceding its soundness, that the statute on conspiracy does not support the indictments, but we are not persuaded that the holding in *State* v. *Borg, supra,* is a bar to their status as accusations under the common law. We find no support for counsel's argument in the issues there determined. The indictment in that case was an exceedingly brief document of less than twenty-five printed lines. It charged that two men, private citizens, had conspired to cheat the State of New Jersey of $200,000 to which the State of New Jersey was then lawfully entitled, and that in pursuance of the conspiracy one of the two conspirators refused, and caused the refusal, to pay a check to the treasurer of the state in the amount of $200,000. The court found that the indictment was insufficient upon its face. There is so little in common between that indictment and

the ones before us that further elucidation of the distinction seems unnecessary.

The indictments are definitely stated. The acts charged do not lack identification. Defendants are left in no uncertainty as to the precise matters laid against them. They may plead without confusion and they may prepare their defense with foreknowledge of the state's charges. The, trial court will have no difficulty in perceiving the issues. Future pleas in bar of prosecution for the same offenses have a definite record on which to rest. The outstanding element in both indictments is that the conspirators fraudulently bound themselves to accomplish a reduction in tax assessments to the pecuniary advantage of some or one of them by an unlawful method. Nothing comes closer to the corporate existence of a community or to the lives of its members than public taxation. That subject and irregularities thereunder have produced wars and unmade governments. The defendants were all public servants of the city engaged in one phase or another of tax imposition and collection, and none of them, singly or in combination, had the lawful right to reduce assessments; none of them, alone or together, had the right to accomplish lawfully that which, according to the charge, they undertook to do in company and which they did accomplish by the acts of O'Brien in doing that which he had no authority to do. Reading the several overt acts with the allegation of conspiracy, there is a charge that the payments of money to Black were unlawful. But the vital element is not illicit gain. It is that the conspirators bound themselves in an unrighteous compact to obtain a result by unlawful means. And the overt act set up in an indictment for conspiracy may or may not be in itself criminal; the conspiracy is the crime and the overt act named may be relatively insignificant. It is of no importance that one or another of the conspirators did not profit financially or that the lowered assessments were not undervaluations. Or that other persons might have been but were not included in the indictment conspiracy. *State* v. *Garrison*, 130 *N. J. L.* 350. In view of the intimate connection between loss to a city and loss to the taxpayers from whom the funds of the city come, we see no vital defect

in the allegation that the cheating was against the city rather than against those who, by their tax payments, support the city. Moreover, it takes a refinement of reasoning rather beyond the field of an indictment to demonstrate that an unlawful act which reduces tax assessments does not, directly or indirectly, temporarily if not permanently, diminish public revenue. "The intended victim of this concerted fraud is a municipal corporation; an artificial body contrived for the administration of local government, and is the representative, in important respects, of the civil interests of a large body of persons. A concerted plan to cheat such an institution must, upon obvious principles, be a public offence of a penal character." *State* v. *Young,* 37 *Id.* 184. If public officials may combine to achieve results beneficial to themselves or to those in whom they are interested by unlawful methods, as in the indictments set forth, without thereby exposing themselves to the penal processes of the state, we shall speedily experience a lowering of public morals.

The statute (*R. S.* 2:119–1, formerly section 37 of the Crime Act) does not pre-empt common law conspiracy. A combination is a conspiracy in law whenever the act to be done has a necessary tendency to prejudice the public or oppress individuals by unjustly subjecting them to the power of the confederates and giving effect to the purposes of the latter, whether of extortion or of mischief. *State* v. *Loog,* 13 *N. J. Mis. R.* 536; *affirmed, sub nom. State* v. *Henry,* 117 *N. J. L.* 442; *State* v. *Continental Purchasing Co., Inc,* 119 *Id.* 257, and cases there cited; *State* v. *Ellenstein,* 121 *Id.* 304.

"It must be borne in mind that it is wholly unimportant whether conspirators succeed or fail in the attainment of the object of their agreement, for the fact, once established, that an attempt was made to attain the unlawful object, even by legal means, *or the use of unlawful means to attain a lawful object,* stamps the agreement as a criminal conspiracy." *State* v. *Herbert,* 92 *N. J. L.* 341, 356.

Indictment No. 69 is against Robert A. O'Brien for misconduct in office. The charge is that O'Brien was a public officer, namely, clerk and executive assistant to the Board of

Tax Commissioners in the Department of Revenue and Finance in the City of Jersey City, appointed by resolution passed by the Board of Commissioners; that Arthur Potterton was Director of Revenue and Finance and also tax assessor of the city and that the public duty of assessing real and personal property for taxation therein was enjoined solely and exclusively upon him; that the Board of Taxation of the city was charged with the public duty of advising, consulting and recommending to Potterton, assessor as aforesaid, assessments and changes in the assessments of real and personal property for taxation; that O'Brien as such clerk and executive assistant was charged with various public duties, among others the duty of keeping the records and files of the Jersey City Board of Taxation; and that O'Brien committed enumerated violations of his duties and obligations. One of the specified offenses was that on December 9th, 1943, O'Brien as such officer "did willfully, unlawfully and corruptly cause assessment for taxation of real property to be revised and to wit: did cause the assessment for taxation of real estate known and designated as * * * [describing it] * * * to be reduced from an assessment on Land, Sixty-four hundred dollars, Improvement Eighty-two hundred dollars, totalling Fourteen thousand, six hundred dollars, to Land Sixty-four hundred dollars, Improvement Four thousand dollars, totalling Ten thousand, four hundred dollars for the year 1944. The establishment of the aforesaid illegal and unwarranted assessment of the aforesaid premises, on the part of the said Robert A. O'Brien, was perpetrated in the following manner; to wit: On or about December 1st, 1943, the said Robert A. O'Brien ordered Sub-Assessor M. J. McLoughlin to make out a Revision Sheet No. 15693 and told him to set forth thereon a reduction of the assessment of the Improvement in the sum of Forty-two hundred dollars for the year 1944; and he further ordered him to write on the said Revision Sheet that the reason for the reduction in the assessment was 'Action by the Board of Tax Commissioners and Recent Sale;' that the said Sub-Assessor, in pursuance of said order from said O'Brien, did draw up said Revision Sheet and recommend thereon a reduction on the Improvement in the

sum of Forty-two hundred dollars for the year 1944, and he did write thereon as the reason for the reduction that the same as 'Action by the Board of Tax Commissioners and Recent Sale;' that the said Revision Sheet setting forth said reduction was approved by the said Robert A. O'Brien on December 9th, 1943, as appears by his endorsement thereon; that on December 9th, 1943, the Jersey City Board of Tax Commissioners did by its resolution passed on said date establish a 1944 assessment for the aforesaid premises to be the same assessment as for the year 1943; to wit: Land Sixty-four hundred dollars, Improvement Eighty-two hundred dollars, total Fourteen thousand six hundred dollars; that pursuant to the recommendation of the Board of Tax Commissioners of the City of Jersey City made at its said meeting on December 7th, 1943, Tax Assessor of Jersey City did enter or cause to be entered upon the assessment rolls for the year 1944, the assessment of Sixty-four hundred dollars for the Land, Eighty-two hundred dollars for the Improvement, making a total of Fourteen Thousand, six hundred dollars; but that, nevertheless, the aforesaid Robert A. O'Brien, regardless of the aforesaid action of the Jersey City Tax Commissioners, *corruptly, illegally and unlawfully did change or cause to be changed the original tax assessment rolls* to read as follows:—Land, Sixty-four hundred dollars, Improvement Four thousand dollars, totalling Ten thousand, four hundred dollars, with the intent and purpose to perpetrate a fraud upon the City of Jersey City and in violation of his duties and obligations to protect the rights and interests of the City of Jersey City with respect to levying and assessing of taxes in and for the City of Jersey City."

The indictment is criticised upon the ground that the Board of Tax Commissioners in the Department of Revenue and Finance is not pleaded as having a *de jure* existence. The existence of the board is clearly pleaded. Whether it existed as a *de jure* or *de facto* board is not important. *Kirby* v. *State,* 57 *N. J. L.* 320. Moreover, the board is not an accused party.

The weight of the argument is on the point that the course of defendant's duty is not be found in the general statutes

and therefore should be, but is not, specially pleaded. "Where an offence consists in an omission to do some act, the indictment must show how the defendant's obligation to perform the act arises, unless it is a duty annexed by law to the office which the defendant sustains." *State* v. *Hageman,* 13 *N. J. L.* 314, 320. When a general law of the state creates an office, the indictment need not recite the public statute creating it for the courts are bound to take notice of public statutes; but when an office is created by private act, the court cannot judicially notice the private statute. *State* v. *Haddonfield and Camden Turnpike Co.,* 65 *Id.* 97. Where there is no law of which the court takes judicial cognizance imposing a duty on a defendant, the special circumstances creating the duty must be distinctly alleged before the defendant can be required to answer for neglect. *State* v. *Middlesex and Somerset Traction Co.,* 67 *Id.* 14.

Most of the specified instances of misconduct are, we believe, vulnerable to the attack. On this branch of the argument the state has apparently confused the question of *de jure* or *de facto* officer with the question of whether the enumerated duties are upon the officer regardless of whether he be *de jure* or *de facto.* But the charge which we have restated at length above does not contain that fault. *R. S.* 40 :171–124 provides that in cities of the first class the Board of Tax Commissioners shall have the power to appoint a chief clerk, and *R. S.* 40 :171–127 provides that the chief clerk, in addition to such other duties as may be imposed by the board, shall have charge of the records, books, and papers of said department. Such misconduct as grounds in duties specially imposed do not serve to sustain an indictment unless the source is pleaded, but in this instance the charge goes directly to the duties imposed by a general statute of which we must take notice. The defendant is accused of corruptly and unlawfully changing the records which, by public statute, were placed in his custody. The suggestion that the government of Jersey City has been so changed as to create an entirely different office not subject to and free of the burdens imposed by the general statutes has not convinced us that the indictment on its face is fatally defective.

Defendants also advance that the indictment is void for certain reasons *de hors* the record, namely, that the Deputy Attorney-General was present in the grand jury room during the taking of the vote and that the Attorney-General was present in Hudson County during an extended period when there was no county prosecutor, both of which points were considered and decided adversely to the defense in *State* v. *McFeeley et al.*, 136 *N. J. L.* 102; also the matters presented on the "common brief" discussed and decided in *State* v. *Grundy*, 136 *Id.* 96.

Without taking up those questions again, we refer to our determinations of them and rest thereon.

The writs of *certiorari* will be dismissed and the motion to quash will be denied, with costs.