STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CHARLES WELECK, DEFENDANT-RESPONDENT.

Argued September 8, 1952—Decided October 20, 1952.

Mr. *Paul T. Huckin,* Deputy Attorney-General, argued the cause for the appellant (Mr. *Harry L. Towe,* Deputy Attorney-General and Acting Prosecutor for Bergen County).

Mr. *Joseph Weintraub* argued the cause for the respondent (Mr. *John E. Selser,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J.   On June 26, 1951, the Bergen County grand jury returned two indictments against the defendant, one charging misconduct in office and the other attempted extortion.   The defendant specially pleaded the statute of limitations and moved in the Bergen County Court to dismiss the indictments on the grounds that they were barred by the statute of limitations, *R. S.* 2:183–2, and that they failed to charge a crime.   The County Court, being of the opinion that the indictments were not voted within the two-year period prescribed by the statute, granted the defendant's motion and entered judgments dismissing each indictment.

We granted the State's petition for certification to review the judgments thus entered, *State v. Weleck,* 9 *N. J.* 286 (1952).

Before proceeding to a consideration of the propriety of the action of the County Court we shall first dispose of the question raised by the defendant as to the jurisdiction of this court to review these judgments by way of certification directly to the County Court—a question, incidentally, that was not raised by the defendant in opposition to the granting of the State's petition for certification.

Under the *Constitution of* 1844 it was recognized that the granting or denial of a motion to quash an indictment was only reviewable in the former Supreme Court by writ of *certiorari* for abuse of discretion, *State v. Then,* 114 *N. J. L.* 413 (*Sup. Ct.* 1935). Relying on *Article* VI, *Section* V, *paragraph* 4 of the *Constitution of* 1947 which provides,

"Prerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary."

the defendant contends that the Superior Court is the sole depository of jurisdiction to review the judgments dismissing the indictments against him. The defendant concedes, however, that if the State had taken an appeal to the Appellate Division of the Superior Court certification by this court to the Appellate Division while the appeal was there pending would have been in order. Such in effect was the procedure followed in *Central R. Co. of N. J. v. Dept. of Public Utilities,* 7 *N. J.* 247, 257–259 (1951).

We cannot agree with the defendant's contention that the procedure followed herein has left this court without jurisdiction. Pursuant to *Article* VI, *Section* V, *paragraph* 4 of the *Constitution of* 1947 it has been provided by rule that in lieu of prerogative writs in criminal causes review may be had in the Appellate Division of the Superior Court on appeal granted, *Rule* 4:5–1. More specifically, it has

elsewhere been provided by rule that in lieu of the former writ of *certiorari,* now abolished, the State may take an appeal from an order of the trial court dismissing an indictment, *Rule* 2:5–3(*b*) (7). Quite clearly, therefore, under our present Constitution and rules the State here had an appeal to the Appellate Division of the Superior Court. An appeal to the Appellate Division, however, was not the sole and exclusive way in which the State could secure a review. *Article* VI, *Section* V, *paragraph* 1 of the *Constitution of* 1947 specifically provides:

"Appeals may be taken to the Supreme Court: * * *

(d) On certification by the Supreme Court to the Superior Court and, where provided by rules of the Supreme Court, to the County Courts and the inferior courts; * * *."

Supplementing this constitutional provision this court has provided for certification directly to the County Courts and the inferior courts both on its own motion, *Rule* 1:5–1, and on petition, *Rule* 1:5–3. It was pursuant to this latter rule that the petition for certification in the instant case was made and granted.

*Article* VI, *Section* V, *paragraph* 1 of the *Constitution of* 1947 does not expressly require, and it has never by implication been construed to mean, that an appeal from a trial court to the Appellate Division of the Superior Court must first be taken before this court can exercise its power of certification. To hold that the jurisdiction of this court to entertain an appeal by way of certification was thus limited would be technical in the extreme. *Article* I, *Section* V, *paragraph* 1 of the *Constitution of* 1947 quite plainly means that whenever an appeal lies from a judgment of a trial court —whether it be as of right or as a matter of discretion and whether it be from the Law or Chancery Division of the Superior Court, a County Court, or an inferior court—we may certify the cause directly to the trial court, either on our own motion or on petition, without the necessity of an appeal

first being taken to the Appellate Division of the Superior Court.

When a litigant has an appeal to the Appellate Division of the Superior Court by virtue of *Article* VI, *Section* V, *paragraph* 2 of the *Constitution of* 1947, this court may certify the cause directly to the trial court and we discern no reason why the same should not be true when, as here, an appeal in lieu of review by prerogative writ lies to the Appellate Division of the Superior Court by virtue of *Article* VI, *Section* V, *paragraph* 4 and the appropriate rules of court promulgated pursuant thereto.

██ A motion to quash an indictment is addressed to the discretion of the trial court, *State v. Then, supra,* 114 *N. J. L.* 413 (*Sup. Ct.* 1935), but the court's power to quash is not to be exercised except on "the clearest and plainest ground," *State v. Davidson,* 116 *N. J. L.* 325, 328 (*Sup. Ct.* 1936), and an indictment should stand unless it is "palpably defective," *State v. Russo,* 6 *N. J. Super.* 250, 254 (*App. Div.* 1950). "Such judicial discretion cannot be arbitrary, vague or fanciful but rather must be governed by and in accord with established principles of law," *State v. Bunk,* 4 *N. J.* 482, 485 (1950). Since the exercise of discretionary authority will not be disturbed on appeal or review unless it has been clearly abused, *In re Longo,* 124 *N. J. L.* 176 (*E. & A.* 1949); *State v. Collins,* 2 *N. J.* 406 (1949); *State v. Bunk, supra,* 4 *N. J.* 482 (1950), the ultimate question on this appeal is whether the trial court abused its discretion in granting the defendant's motion to dismiss the indictments.

## INDICTMENT 17105

This indictment, filed on June 26, 1951, charges:

"That CHARLES W. WELECK, * * * on or about the second day of March in the year of our Lord one thousand nine hundred and forty-nine, and at divers times thereafter, * * * being then and there a public officer and employee of the Borough of Hillsdale, * * * to wit: Borough Attorney of said Borough, and having, among other things, the duty to render legal services to said Borough to the best of his ability and uninfluenced by motives adverse to the

best interests of said Borough and the duty not to request or accept any gift, gratuity or promise to make any gift under an agreement or understanding that he would act in any particular manner with reference to the affairs of his employer, the said Borough, did wilfully and unlawfully and in violation of his said duty as said Borough Attorney demand, request and receive from one David G. Lubben, a private citizen, a promise that he, the said David G. Lubben would pay to him, the said Charles W. Weleck, the sum of fifteen thousand dollars * * * which sum was to be paid in equal monthly instalments of five hundred dollars each commencing in July 1949, in return for an agreement or understanding that he, the said Charles W. Weleck, would use his influence and office as said Borough Attorney corruptly to influence, exhort and advise the Mayor and Council of the said Borough of Hillsdale to enact a certain ordinance, then pending, to amend the Zoning Ordinance of said Borough * * *; and he, the said Charles W. Weleck, did on two occasions after July 1st, 1949, to wit on or about July 7th, 1949, and on or about July 14th, 1949, and after the passage of said ordinance demand of the said David G. Lubben the sum of five hundred dollars * * * then allegedly overdue, contrary to the common law and the provisions of *R. S.* 2:103–1 * * *."

It is readily apparent that the indictment undertakes to charge the defendant with misconduct in office, an indictable common law offense and therefore within the purview of *R. S.* 2:103–1 which provides that "* * * all other offenses of an indictable nature at common law, and not expressly provided for by statute, shall be misdemeanors."

 The common law crime of misconduct in office has been well defined in 1 *Burdick, Law of Crime* (1946), § 272, *p.* 387:

"By 'misconduct in office,' or 'official misconduct,' is not meant misconduct, criminal or otherwise, which is committed by a person who happens to be a public officer, but which is not connected with his official duties. Such conduct is sometimes called private misconduct to distinguish it from official misconduct. * * *

"Misconduct in office, or 'official misconduct,' means, therefore, any unlawful behavior in relation to official duties by an officer intrusted in any way with the administration of law and justice, or, as otherwise defined, any act or omission in breach of a duty of public concern, by one who has accepted public office."

As stated quite simply in *State v. Starlup*, 39 *N. J. L.* 423, 425 (*Sup. Ct.* 1877), and again in *State v. McFeeley*, 136

*N. J. L.* 102, 107 (*Sup. Ct.* 1947), "the violation of a prescribed duty to the public is itself a crime, for which the offender may be indicted at common law." It is essential, therefore, that an indictment for misconduct in office allege both a prescribed duty of the office and facts constituting a breach thereof. The defendant contends that the indictment here is deficient in both respects.

■■ The prescribed duties of an office are nothing more nor less than the duties cast by law on the incumbent of the office. Duties may be imposed by law on the holder of an office in several ways: (1) they may be prescribed by some special or private law, such as official action of a township committee, *State v. Hageman,* 13 *N. J. L.* 314, 321 (*Sup. Ct.* 1833), or a provision of a municipal charter, *State v. Startup, supra,* 39 *N. J. L.* 423, 425 (*Sup. Ct.* 1877); (2) they may be imposed by a general act of the Legislature as in *State v. McGovern,* 136 *N. J. L.* 115, 117 (*Sup. Ct.* 1947), and *State v. O'Brien,* 136 *N. J. L.* 118, 127 (*Sup. Ct.* 1947); or (3) they may arise out of the very nature of the office itself, see *State v. Ellenstein,* 121 *N. J. L.* 304, 317–318 (*Sup. Ct.* 1938); *State v. Donovan,* 132 *N. J. L.* 319, 321 (*Sup. Ct.* 1945); *State v. McFeeley, supra,* 136 *N. J. L.* 102, 107–108 (*Sup. Ct.* 1947); and *State v. Lombardo,* 18 *N. J. Super.* 511, 520 (*Cty. Ct.* 1952). In those instances where the duties are prescribed by some special or private law, the indictment must show the source of the duties, but where the duties are imposed by a general statute or arise out of the very nature of the office, the source of the duty need not be alleged in the indictment for the courts will take judicial notice of such duties, *State v. Hageman, supra,* 13 *N. J. L.* 314, 320 (*Sup. Ct.* 1833); *State v. Haddonfield & Camden Turnpike Co.,* 65 *N. J. L.* 97, 98 (*Sup. Ct.* 1900); *State v. Middlesex and Somerset Traction Co.,* 67 *N. J. L.* 14, 15 (*Sup. Ct.* 1901); *State v. McFeeley, supra,* 136 *N. J. L.* 102, 107–108 (*Sup. Ct.* 1947); *State v. O'Brien, supra,* 136 *N. J. L.* 118, 126–127 (*Sup. Ct.* 1947).

The indictment here before us alleges that the defendant as borough attorney had (1) "the duty to render legal services to said Borough to the best of his ability and uninfluenced by motives adverse to the best interests of said Borough for compensation from said Borough" and (2) "the duty not to request or accept any gift, gratuity or promise to make any gift under an agreement or understanding that he would act in any particular manner with reference to the affairs of his employer, the said Borough." The defendant argues that the first of the alleged duties is insufficient to support the indictment since it is merely a statement of the duty owed by any lawyer to his client within the area of the legal representation. It is also argued that there is no allegation that the defendant was called on by the governing body of the borough to render legal services with respect to the pending ordinance to amend the zoning laws, and that in the absence of such a call for legal advice there was no duty to act. The defendant asserts that the second of the duties alleged is inadequate to sustain the indictment since it constitutes a mere statement of an ethical limitation or principle of conduct and not an affirmative duty of office. It is said that if this second allegation as to the defendant's duty were to be considered adequate to support an indictment for misconduct in office, then there would be no need for the existence of other more specific crimes relating to public office, such as the common law crime of extortion and the statutory prohibition of a public official having a personal interest in contracts with an official body. It is further urged by the defendant that both allegations as to his duties as borough attorney are deficient for failure to plead the sources thereof.

We find no merit in any of these arguments and contentions of the defendant. His views as to the prescribed duties of a borough attorney are far too narrow. Just as there are certain duties of police officers that are "fundamental" and "generally known and accepted," *State v. Donovan, supra,* 132 *N. J. L.* 319, 321 (*Sup. Ct.* 1945), and *State v. McFeeley, supra,* 136 *N. J. L.* 102, 108 (*Sup. Ct.* 1947),

so there are certain duties of a borough attorney that are "fundamental" and "generally known and accepted," and the duties alleged in the indictment are clearly among them.

The fact that the first duty pleaded is the same as the duty of a lawyer to his client does not make it any less the duty of a borough attorney to his borough. To the contrary: if a lawyer has a duty, as beyond question of a doubt he does, to render legal services to a client to the best of his ability and uninfluenced by adverse motives and interests, *a fortiori* a borough attorney has a like duty to his borough. There is no requirement that the duties of various public officers be mutually exclusive, but rather it is a well recognized fact that certain basic duties are of necessity common to a wide variety of officers. Thus in *State v. Donovan, supra,* 132 *N. J. L.* 319 *(Sup. Ct.* 1945), the court considered that the mayor and other public officials of the City of Bayonne had a common responsibility for the enforcement of the criminal law. And in *Driscoll v. Burlington Bristol Bridge Co.,* 8 *N. J.* 433, 474–476 (1952), we held that public officers are "under an inescapable obligation to serve the public with the highest fidelity," that "they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity," and that "they must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly." "These obligations," we there held, "are not mere theoretical concepts or idealistic abstractions of no practical force and effect; *they are obligations imposed by the common law on public officers and assumed by them as a matter* of law upon their entering public office [italics added]. The enforcement of these obligations is essential to the soundness and efficiency of our government which exists for the benefit of the people who are its sovereign."

It was not necessary for the imposition on the defendant of the duties alleged in the indictment that the governing body or an official of the borough call upon him for legal advice with respect to the pending amendment to the zoning ordinance. The alleged duties arise out of and are inherent in the office of borough attorney itself and became fastened upon the defendant with his appointment to and acceptance of that office and remained with him so long as he held it. The fact that other and more particular demands might be made upon the defendant in his official capacity in no way negatives the existence of these elemental and fundamental duties of his office. A borough attorney has as great a duty to render legal services to his borough honestly and not corruptly when he does so on his own initiative without a request having first been made upon him as he does when such a request has been made. And in addition he has the plain duty at all times to maintain such a position with respect to the borough that he can perform his other duties properly.

The argument that the second duty of a borough attorney alleged in the indictment is not a duty of office prescribed by law but a mere ethical limitation or principle of behavior is likewise untenable. If a public officer were under no duty imposed by law to regulate his official conduct in accordance with basic moral principles, then he could violate such principles and still be immune from indictment and prosecution for misconduct in office. We recognize no such divorce of morals from the duties of public office.

Accordingly, we are of the opinion that the duties of the defendant's office of borough attorney as alleged in the indictment are sufficient for the purposes thereof. Nor do we consider the failure to allege the sources of those duties to be fatal. The office of borough attorney is provided for by *R. S.* 40:87–15 and as previously pointed out we may take judicial notice of this general statute as well as of the duties naturally arising out of the office created by it. Since the indictment sets forth facts indicating a plain violation of

the duties alleged it follows that an offense under the laws of this State, misconduct in office, has been sufficiently charged.

INDICTMENT 17106

This indictment, likewise filed on June 26, 1951, charges:

"That CHARLES W. WELECK, * * * on or about the second day of March in the year of our Lord one thousand nine hundred and forty-nine, and at divers times thereafter, * * * being the duly appointed and qualified Borough Attorney of the Borough of Hillsdale, * * * did under color of his said office attempt to extort from one David G. Lubben, a private citizen, the sum of fifteen thousand dollars * * * in that he the said Charles W. Weleck did demand of the said David G. Lubben the payment by the said David G. Lubben to him, the said Charles W. Weleck of said sum of fifteen thousand dollars * * * under the promise that he, the said Charles W. Weleck would use his legal knowledge and the power of his office as Borough Attorney aforesaid corruptly to exhort and influence the Mayor and Council of the Borough of Hillsdale to vote in favor of a certain ordinance, then pending, to amend the Zoning Ordinance of the Borough * * * the said sum of fifteen thousand dollars to be paid in monthly installments of five hundred dollars each commencing July first, 1949, and he, the said Charles W. Weleck did on two occasions after July 1st, 1949, to wit, on or about July 7th, 1949, and July 14th, 1949, and after the passage of said ordinance demand of the said David G. Lubben the sum of five hundred dollars * * * the said sum of fifteen thousand dollars and the said installment of the sum of five hundred dollars being a fee or reward not allowed by law to be demanded, charged or accepted by the said Charles W. Weleck of a private citizen for the performance of his duties as Borough Attorney of the Borough of Hillsdale, contrary to the common law and the provisions of R. S. 2:103–4. * * *"

R. S. 2:103–4 referred to in the indictment provides:

"Any person who shall attempt to commit any offense mentioned in this subtitle, or any offense of an indictable nature at common law, though such offense is not actually committed, shall be guilty of a misdemeanor, * * *."

It is apparent that the indictment purports to charge the defendant with an attempt to extort, but it is not clear

whether the crime which it is alleged the defendant attempted was the common law or the statutory crime of extortion, for the indictment makes no reference to *R. S.* 2:127–1 entitled "Extortion" which provides:

"Any judge, magistrate, sheriff, coroner, constable, jailer or other officer who shall by color of his office, receive or take any fee or reward whatsoever not allowed by law for doing his office, shall be guilty of a misdemeanor."

We do not consider the ambiguity fatal, however, for a reading of *R. S.* 2:127–1 does not reveal any plain intention on the part of the Legislature to alter or abolish the common law crime of extortion. In the absence of such intention the statute must be considered with reference to the common law, *Cutter v. State,* 36 *N. J. L.* 125, 126 (*Sup. Ct.* 1873); *Loftus v. State,* 52 *N. J. L.* 223 (*E. & A.* 1890—opinion printed only in 19 *A.* 183); *State v. Norton,* 23 *N. J. L.* 33 (*Sup. Ct.* 1850); and *State v. Ellis,* 33 *N. J. L.* 102 (*Sup. Ct.* 1868).

In *Kirby v. State,* 57 *N. J. L.* 320, 321 (*Sup. Ct.* 1894), it is stated:

"Extortion technically is an official misdemeanor, while in its larger sense it signifies any oppression under color of right; in its strict sense it signifies the taking of money by any officer by color of his office where none or a part only is due. 1 *Hawk, P. C., p.* 418; 2 *Bish. Cr. L.,* § 392; *Rev. Title 'Crimes,' p.* 230, § 23."

The crime is similarly defined in *State v. Barts,* 132 *N. J. L.* 74, 79 (*Sup. Ct.* 1944), affirmed 132 *N. J. L.* 420 (*E. & A.* 1945):

"Extortion, in a comprehensive sense, signifies any oppression under color of right. *Russell on Crimes,* 305. In the strict sense it signifies the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due to him, or more than is due, or before it is due. *Jones' Blackstone, Book* 4, *ch.* 10, *p.* 2324, § 153."

It thus appears that the essential elements of the crime of extortion, both under the statute and at common law, are (1)

an officer (2) by color of his office (3) taking money (4) that is not due him.

The second of these elements of extortion needs, perhaps, a word of explanation. "By color of his office" means simply that the officer must have taken money not due him for the performance of his official duties. There is no requirement that the taking precede the performance of the duties, although generally in extortion such would be the case. In 1 *Burdick, Law of Crime* (1949), § 275, *p.* 395, it is stated:

"At common law, the money or other thing of value must be taken under color of office. That is, *the service rendered*, or to be rendered, *or pretended to have been rendered*, must be apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity." (Italics added)

In *Commonwealth v. Hopkins*, 165 *Pa. Super.* 561, 69 *A. 2d* 428, 431 *(Pa. Super. Ct.* 1949), a fire marshal was indicted for extortion for having accepted money in return for his approval of permits to install oil tanks. The court there said:

"If he took money for the performance of such duties, it makes no difference whether it was sought to be disguised as a tip or gratuity. It is unimportant whether the money was actually paid to him before or after the approval of the application, if, as the jury found, the arrangement was that it was to be paid for the ·performance of *the duties of his station.*"

In the instant case, therefore, it is of no concern that at the time the money was to be paid under the arrangement the amendment to the zoning ordinance had already passed.

It is the well settled rule that there cannot be a conviction for an attempt to commit a crime unless the attempt, if completed, would have constituted a crime, *State v. Cooper*, 22 *N. J. L.* 52 *(Sup. Ct.* 1849); *Marley v. State*, 58 *N. J. L.* 207 *(Sup. Ct.* 1895); and *State v. Stow*, 83 *N. J. L.* 14 *(Sup. Ct.* 1912). Relying upon this rule, the defendant

contends that the indictment here is deficient since the offense charged, if completed, would not constitute extortion. With this contention we cannot agree. The indictment, in brief, charges that (1) the defendant as borough attorney (2) under color of his office (3) demanded money (4) that was not allowed him by law. Obviously if the defendant's demands had been acceded to and the money actually paid to him all of the essential elements of the crime of extortion would be present.

The defendant next attacks the indictment on the grounds that a mere solicitation or demand is not an attempt and that there is no allegation of any overt acts constituting an attempt. The attack is without merit. The overt acts necessary to constitute an attempt must be viewed in the light of the intended crime. As previously indicated, if the defendant had actually taken money under the circumstances alleged he would have committed extortion. The next step short of actually taking money is to demand it. The demand is the overt act constituting the attempt. If a demand were not here sufficient, then it would be impossible to allege and prove the crime of attempted extortion for we can imagine no other act which would suffice.

The defendant's final contention is that the indictment fails to allege an intent to commit the crime of extortion. We recognize that to be guilty of an attempt to commit a crime a defendant must have intended to commit the crime itself, *State v. Schwarzbach,* 84 *N. J. L.* 268 (*E. & A.* 1913); *State v. Blechman,* 135 *N. J. L.* 99 (*Sup. Ct.* 1946). The only question here is whether the indictment sufficiently alleges the requisite intent. While the word "intent" does not appear in the indictment, it is alleged that the defendant did "attempt to extort." These words we believe are equivalent to an allegation that the defendant acted "with intent to extort." The requirement of *Rule* 2:4–11 that the indictment state "the essential facts constituting the offense charged" is clearly met.

374

## Statute of Limitations

██ ██ Being of the opinion that the indictments adequately charge misconduct in office and attempted extortion, respectively, we must now consider whether prosecution thereon is barred by *R. S.* 2:183–2 which provides:

"No person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefor shall be found within two years from the time of committing the offense or incurring the fine or forfeiture. * * *"

An indictment for misconduct in office may allege a series of acts spread across a considerable period of time, *State v. Bolitho*, 103 N. J. L. 246, 261 (*Sup. Ct.* 1927), affirmed 104 N. J. L. 446 (*E. & A.* 1927); *State v. McFeeley, supra*, 136 N. J. L. 102, 107 (*Sup. Ct.* 1947). If any of the acts fall within the two years next preceding the return of the indictment, prosecution is not barred by the statute of limitations, *State v. McFeeley, supra*, 136 N. J. L. 107, 105–106 (*Sup. Ct.* 1947). As in the *McFeeley* case the duty of a police officer to prosecute criminal offenders was held to continue so long as he holds office, so in the instant case the duties of a borough attorney as set forth in the indictment and previously discussed herein are continuing in nature. When the defendant demanded money of Lubben and entered into a corrupt agreement with him, it constituted a breach of those duties and the breach continued so long as the defendant held office and persisted in his efforts to obtain the money from him. Since the indictment alleges that the defendant while still borough attorney made a demand upon Lubben on July 7, 1949, and again on July 14, 1949, it is readily apparent that the defendant was charged with acts of misconduct within two years of the return of the indictment on June 26, 1951, and, accordingly, that the statute of limitations does not preclude prosecution of the offense.

██ ██ Unlike misconduct in office, extortion and attempted extortion, are not continuing offenses. If an officer

by color of his office takes money that by law is not due him, he has committed the crime of extortion. The offense is complete with the taking and not before, and the statute of limitations runs from the time of the taking. Similarly the offense of attempted extortion is committed when an officer by color of his office demands the payment of money not due him. The offense is complete with the making of the demand and not before, and the statute of limitations runs from the time of the demand. If as a result of the demand payment is actually made to the officer, the intended crime of extortion is committed and the attempt is merged in the completed crime. If no payment is made and the demand for payment is repeated, the officer is guilty of a second and separate attempt to extort.

The indictment in question charges the defendant with making three demands, one on March 2, 1949, another on July 7, 1949, and a third on July 14, 1949. In effect, therefore, the indictment charges the defendant with three separate attempts. The first attempt, being more than two years prior to the return of the indictment, is plainly barred by the statute of limitations, but prosecution for the remaining two attempts is not so barred.

The difficulty remains, however, that in a single count the indictment charges the defendant with three separate and distinct offenses, contrary to "the well-settled legal rule that a count in an indictment cannot be utilized for the purpose of joining separate and distinct offenses even though of a like nature," *State v. Bolitho,* 103 *N. J. L.* 246, 263 (*Sup. Ct.* 1927), affirmed 104 *N. J. L.* 446 (*E. & A.* 1927). Duplicity in an indictment, however, is not necessarily fatal but may be cured by an appropriate amendment striking out all but one of the offenses charged. Thus in *State v. Lamb,* 81 *N. J. L.* 234, 240 (*Sup. Ct.* 1911), it was stated:

"It savors of technicality to hold an indictment bad merely because through defective pleading too much has been charged against the defendant. * * * No harm can be done the defendant by permitting the state to strike one of the charges from the indictment.

This course secures to the defendant his constitutional right to an indictment by a grand jury and prevents a possible miscarriage of justice through defective pleading.  *  *  *  It will be for the state to elect on which charge the defendant shall be tried."

So in the instant case a possible miscarriage of justice may be averted without infringing on the defendant's constitutional rights by an amendment to the indictment. It will be for the State to decide on which of the offenses charged the defendant is to be tried. Quite obviously the State may not elect to try the defendant for an attempt on March 2, 1949, for the reason that any prosecution thereon is barred by the statute of limitations. The striking of that alleged attempt, however, will not prevent the State from proving at the trial such of the facts relating thereto as may be otherwise admissible to show the defendant's guilt of an attempt on one of the two dates subsequent thereto.

## Conclusions

For the reasons expressed herein we are of the opinion that both indictments plainly charge the defendant with offenses against the laws of this State and that the prosecution thereof is not barred by the statute of limitations. Under the circumstances we consider that the trial court abused its discretion in dismissing the indictments on the defendant's motion. We have noted that the indictment for attempted extortion as it now stands charges more than one offense. Since the defendant in his motion to dismiss the indictment raised no objection on this ground and since the defect may be cured by an appropriate motion made pursuant to *Rule* 2:4–13, we see no reason why the indictment should be dismissed for this reason.

The judgments appealed from are reversed and both indictments are remanded to the Bergen County Court for trial, with leave to the State to move to amend Indictment 17106 so as to eliminate therefrom all but one of the attempts to extort charged therein.

HEHER, J., (concurring in reversal). The "misconduct in office" laid to the accused in the first indictment could not "continue" as an offense after the passage of the ordinance in question, for the essence of the charge is that the accused, "in violation of his duty" as borough attorney, did "demand, request and receive" from Lubben "a promise" of the payment of $15,000 in equal monthly installments of $500, commencing in July, 1949, "in return for an agreement or understanding" that the accused, "would use his influence and office" as borough attorney "corruptly to influence, exhort and advise the Mayor and Council of the Borough * * * to enact" the pending amendment of the local zoning ordinance. Such is the breach of official duty pleaded. The mere demand for the illicit *quid pro quo* did not serve to "continue" the offense so as to intermit the statute of limitations. Indictable misconduct in office involves the breach of a duty laid upon the incumbent by the law, either of commission or omission. It is conduct "by which the legal duties imposed by law have not been properly and faithfully discharged." 67 *C. J. S.* 432. There is an obvious distinction of substance between a violation of a duty incident to an office and the later demand for payment of the corrupt consideration, after the breach or failure of duty bargained for.

The demand for the consideration constituted an attempt to commit the crime of extortion, and this is the offense charged in the second indictment, in certain, definite and legally sufficient terms. The grand jury itself made the distinction. I concur in the reasoning of the Chief Justice sustaining this indictment. Compliance with the demand would have constituted criminal extortion. If there be an intent to commit a given crime and a direct ineffectual act done towards its consummation, the elements of an indictable attempt to commit the crime are present. 14 *Am. Jur.* 813.

WACHENFELD, J. (dissenting). The majority opinion finds the trial court abused its discretion in dismissing the

indictments. The court below determined merely that the statute of limitations applied and, having so concluded, it could not do otherwise. The first inquiry, therefore, is whether the statute of limitations precluded the prosecution. Did the two-year period run from the date of the corrupt agreement and thus expire before the indictments were returned, or did it run from the date of the last demand, to wit, July 14, 1949, which is within the two-year period?

The State's theory is based upon the assumption the crimes of extortion and official misconduct as charged in the indictments are continuing offenses and the statute runs from the last overt act.

The agreement of March 2, 1949 and the adoption of the ordinance March 30, 1949 occurred admittedly more than two years before the return of the indictments on June 26, 1951, leaving the only events upon which the State can maintain its case the alleged demands for payment of $500 of July 7 and July 14, after the passage of the ordinance.

A continuous offense must consist of conduct which, after it becomes a complete offense, continues as such and contains the same essential characteristics and has all the ingredients of the full offense throughout the period in which it is continuous. In such instances the statute runs from the moment the offense first comes into being, but since the complete offense is repeated, it continues as a wrong and, if committed within the two-year period, may be prosecuted, notwithstanding that so much of criminal conduct as antedated the two-year period could not be punished. Typical of this classification are public nuisances and desertions.

In the instant case the charge set forth in the indictments was undertaking "corruptly to influence, exhort and advise the Mayor and Council of the said Borough of Hillsdale to enact a certain ordinance *then pending*."

The only duty here involved was to render legal advice and services in the preparation of the ordinance. The passage and adoption of the ordinance by the municipality two years

before the return of the indictment cut off the obligation and any duty resting upon the defendant in reference to it.

There no longer was an "ordinance then pending" as cited in the indictment nor was there any further "duty" on the defendant's part as to it in the month of July 1949.

The corrupt bargain had been made; and even assuming the defendant acted thereon, his wrongful conduct in improperly advising or influencing or attempting to influence the municipal body in its performance of a governmental function had been completed more than two years prior to the return of the indictments.

Nothing more remained for the defendant to do. He could not advise or influence the municipality to pass an ordinance already established in solemn form by the governing authorities.

Judicially we are not warranted in extending the statute of limitations. It is a legislative mandate the propriety and wisdom of which reside in the Legislature. Our obligation is to enforce it as adopted.

Having concluded the statute of limitations was applicable, in my view of the case no consideration need be given to the contention advanced but not passed upon below that the indictment fails to state a crime.

In this regard, however, I am not in accord with the reasoning or the conclusion of the majority but need not further express my thoughts because of my determination as to the applicability of the statute of limitations.

Justice OLIPHANT authorizes me to say he is in accord with these views.

I would affirm the judgment below.

HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT and Justices HEHER, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justices OLIPHANT and WACHENFELD—2.